1  IRELL & MANELLA LLP
   Andra Barmash Greene (123931)
2  agreene@irell.com
   A. Matthew Ashley (198235)
3  mashley@irell.com
   840 Newport Center Drive, Suite 400
4  Newport Beach, California 92660-6324
   Telephone:   (949) 760-0991
5  Facsimile:   (949) 760-5200

6  Attorneys for Defendants

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10             **SAN FRANCISCO DIVISION**

11 L.A. Taxi Cooperative, Inc. dba Yellow Cab     )  Case No. 3:15-cv-01257-JST
   Co.; Administrative Services SD, LLC dba       )
12 Yellow Radio Service; All Yellow Taxi, Inc.    )  **DEFENDANTS' NOTICE OF MOTION**
   dba Metro Cab; American Cab, LLC;              )  **AND MOTION TO DISMISS;**
13 American Cab, LLC dba Pomona Valley            )  **MEMORANDUM OF POINTS AND**
   Yellow Cab; Bell Cab Company, Inc.; Big Dog    )  **AUTHORITIES IN SUPPORT THEREOF**
14 City Corporation dba Citywide Dispatch,        )
   Citywide Taxi, and Big Dog Cab; Cabco         )  [Filed Concurrently with: Declaration of A.
15 Yellow, Inc. dba California Yellow Cab; C&J     )  Matthew Ashley; [Proposed] Order]
   Leasing, Inc. dba Royal Taxi; G&S Transit      )
16 Management, Inc.; Gorgee Enterprises, Inc.;     )  Date:     July 9, 2015
   LA City Cab, LLC; Long Beach Yellow Cab       )  Time:     2:00pm
17 Co-operative, Inc.; Network Paratransit        )  Judge:    Hon. Jon S. Tigar
   Systems, Inc.; South Bay Co-operative, Inc.    )  Place:    San Francisco Courthouse
18 dba United Checker Cab; Taxi Leasing, Inc.     )            Courtroom 9, 19th Floor
   dba Yellow Cab of Ventura County; Tri-City     )            450 Golden Gate Ave.
19 Transportation Systems, Inc.; Tri Counties     )            San Francisco, CA 94102
   Transit Corporation dba Blue Dolphin Cab of    )
20 Santa Barbara, Yellow Cab of Santa Maria,      )
   and Yellow Cab of San Luis Obispo; and        )
21 Yellow Cab of South Bay Co-operative, Inc.     )
   dba South Bay Yellow Cab,                      )
22                                                 )
              *Plaintiffs*,                         )
23                                                 )
          vs.                                       )
24                                                 )
   Uber Technologies, Inc.; Rasier, LLC; and     )
25 Rasier-CA, LLC,                                )
                                                  )
26            *Defendants*.                         )
                                                  )
27

28

---

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..........................................................................................1

II.  PLAINTIFFS' COMPLAINT FAILS TO PLEAD AN ACTIONABLE
     STATEMENT ...............................................................................................2

     A.   The Alleged Statements Are Not Actionable Because (In Addition
          To Being True) They Are Not Quantifiable And Specific .......................3

     B.   The Aspirational Statements Are Non-Actionable As A Matter Of
          Law ......................................................................................................5

     C.   The Statements Misleadingly Quoted Out Of Context Are Non-
          Actionable As A Matter Of Law ...........................................................6

     D.   The Statements Made To News Media And Statements Made After
          Rides Were Completed Are Not Commercial Advertising And Thus
          Are Non-Actionable ..............................................................................8

          1.   Statements made to the news media are protected speech ...........8

          2.   Receipts referring to the "Safe Rides Fee" do not propose a
               future commercial transaction and are thus not actionable ......10

III. PLAINTIFFS ARE NOT ENTITLED TO RELIEF UNDER THE UCL
     OR FAL ..................................................................................................10

     A.   Plaintiffs Lack Standing .....................................................................11

     B.   Plaintiffs Cannot Seek Restitution Under The UCL Or FAL ..............12

IV.  CONCLUSION ...........................................................................................13

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**<u>Cases</u>**

4
*Am. Italian Pasta Co. v. New World Pasta Co.,*
    371 F.3d 387 (8th Cir. 2004)........................................................................................ 7

5

6
*Am. Master Lease LLC v. Idanta Partners, Ltd.,*
    225 Cal. App. 4th 1451 (2014)................................................................................. 12

7
*Bizcloud, Inc. v. Computer Sciences Corp.,*
    2014 WL 1724762 (N.D. Cal. Apr. 29, 2014) ......................................................... 13

8

9
*Boule v. Hutton,*
    328 F.3d 84 (2d Cir. 2003) .................................................................................... 8, 9

10
*Brown v. Abbott Labs., Inc.,*
    No. 10 C 6674, 2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) ................................ 4

11

12
*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
    475 F. App'x 113 (9th Cir. 2012).......................................................................... 2, 6

13
*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG,*
    752 F.3d 173 (2d Cir. 2014)..................................................................................... 5

14

15
*Clark v. Superior Court,*
    50 Cal. 4th 605 (2010)............................................................................................ 12

16
*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
    173 F.3d 725 (9th Cir. 1999).................................................................................... 3

17

18
*Fraker v. KFC Corp.,*
    2006 U.S. Dist. LEXIS 79049 (S.D. Cal. Oct. 19, 2006)....................................... 7

19
*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
    352 F.3d 367 (9th Cir. 2003) ................................................................................... 5

20

21
*Gonzalez v. Allstate Ins. Co.,*
    No. CV 04-1548FMCPJWX, 2005 WL 5891935 (C.D. Cal. Aug. 2, 2005) .................... 10

22
*Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,*
    59 Cal. 4th 277, 326 P.3d 253 (2014) ..................................................................... 5

23

24
*Hoffman v. A. B. Chance Co.,*
    339 F. Supp. 1385 (M.D. Pa. 1972) ........................................................................ 4

25
*Hughes v. Panasonic Consumer Electronics Co.,*
    No. CIV.A. 10-846 SDW, 2011 WL 2976839 (D.N.J. July 21, 2011) .............................. 4

26

27
*In re Bare Escentuals, Inc. Sec. Litig.,*
    745 F. Supp. 2d 1052 (N.D. Cal. 2010) .................................................................. 7

28
*In re Bayer AG Sec. Litig.,*
    No. 03 CIV.1546 WHP, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ...................... 4

- ii -

**Page(s)**

*In re Cornerstone Propane Partners, L.P.*,
    355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................................. 4

*In re Facebook PPC Adver. Litig.*,
    No. 5:09-CV-03043-JF, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) ........................ 12

*In re Ford Motor Co. Sec. Litig., Class Action*,
    381 F.3d 563 (6th Cir. 2004)........................................................................................ 4

*In re Gilead Sciences Sec. Litig.*,
    No. C03-4999 MJJ, 2005 WL 181885 (N.D. Cal. Jan. 26, 2005)........................................ 9

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 207 P.3d 20 (2009) ........................................................................ 11

*Intertape Polymer Corp. v. Inspired Technologies, Inc.*,
    725 F. Supp. 2d 1319 (M.D. Fla. 2010) ..................................................................... 4

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005).................................................................................... 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003)................................................................................... 12, 13

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310, 246 P.3d 877 (2011) ...................................................................... 12

*Lee Myles Associates Corp. v. Paul Rubke Enterprises, Inc.*,
    557 F. Supp. 2d 1134 (S.D. Cal. 2008) .................................................................... 13

*Levine v. Blue Shield of California*,
    189 Cal. App. 4th 1117, 117 Cal. Rptr. 3d 262 (2010) ...................................................... 11

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002).......................................................................................... 9

*Nat'l Servs. Grp., Inc. v. Painting & Decorating Contractors of Am., Inc.*,
    No. SACV06-563CJC(ANX), 2006 WL 2035465 (C.D. Cal. July 18, 2006) ................... 9

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008)...................................................................... 2, 3, 5, 6

*O'Connor v. Uber Technologies, Inc.*,
    No. C-13-3826 EMC, 2014 WL 4382880 (N.D. Cal. 2014)........................................... 11

*Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014) ....................................................................................... 2

*Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*,
    No. 12-CV-04115-JST, 2014 WL 2905387 (N.D. Cal. June 25, 2014)............................ 5

- iii -

1

**Page(s)**

2

3    *Rice v. Fox Broad. Co.*,
            330 F.3d 1170 (9th Cir. 2003) ................................................................. 8, 10
4
     *Risner v. Regal Marine Indus., Inc.*,
5            8 F. Supp. 3d 959 (S.D. Ohio 2014) ........................................................... 4

6    *Shaker v. Nature's Path Foods, Inc.*,
            No. EDCV 13-1138-GW OPX, 2013 WL 6729802 (C.D. Cal. Dec. 16,
7            2013).............................................................................................................. 2

8    *SkinMedica, Inc. v. Histogen Inc.*,
            869 F. Supp. 2d 1176 (S.D. Cal. 2012) ...................................................... 13
9
     *Tietsworth v. Sears, Roebuck & Co.*,
10           No. 5:09-CV-00288 JFHRL, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ..................... 4

11   *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
            709 F. Supp. 2d 821 (C.D. Cal. 2010)....................................................... 3, 9
12
     *Zapata v. Walgreen Co.*,
13           No. CIV.08-5416(RHK/FLN), 2009 WL 3644897 (D. Minn. Nov. 2, 2009).................... 4

14   *Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*,
            32 F. Supp. 3d 1088 (N.D. Cal. Mar. 25, 2014) ......................................... 2
15
     *ZL Technologies, Inc. v. Gartner, Inc.*,
16           No. CV 09-02393 JF (RS), 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009)....................... 11

17   **Statutes**

18   15 U.S.C. § 1125(a) ............................................................................................... 2

19   Cal. Bus. & Prof. Code § 17200................................................................... 2, 12

20   Cal. Bus. & Prof. Code § 17500................................................................... 2, 12

21   **Other Authorities**

22   5 McCarthy on Trademarks and Unfair Competition § 27:38 (4th ed.)................ 5

23

24

25

26

27

28

3424868

1
2

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

3   PLEASE TAKE NOTICE THAT on July 9, 2015, at 2:00 p.m., or as soon thereafter as the
4   matter may be heard, in Courtroom 9, 19th Floor 450 Golden Gate Avenue, San Francisco, CA,
5   94102, before the Honorable Jon S. Tigar, Defendants Uber Technologies, Inc., Rasier, LLC, and
6   Rasier-CA, LLC will and hereby do move the Court for an order dismissing Plaintiffs' complaint.
7   Defendants' motion is based upon this Notice of Motion, the Memorandum of Points and
8   Authorities offered in support thereof, the supporting Declaration of A. Matthew Ashley and all
9   exhibits thereto, all documents in the Court's file, any matters of which this Court may take
10  judicial notice, and any evidence or argument presented on this matter.

11  Dated:  May 14, 2015

IRELL & MANELLA LLP
Andra Barmash Greene
A. Matthew Ashley

12
13
14

By:  /s/  A. Matthew Ashley

15

A. Matthew Ashley
Attorney for Defendants

16
17
18
19
20
21
22
23
24
25
26
27
28

- 1 -

1      **MEMORANDUM AND OF POINTS AND AUTHORITIES**

2  **I.      INTRODUCTION**

3          For decades Plaintiffs' taxi companies have failed to innovate and provided poor service,

4  inflated prices, and lack of meaningful consumer choice.  Then Uber Technologies Inc. ("Uber")

5  launched an innovative ride sharing platform that allowed users to request rides from a network of

6  transportation providers using the Uber smartphone application (the "App").  Like dozens of taxi

7  coalitions across the country, Plaintiffs responded to this innovation by filing a meritless lawsuit

8  claiming that Uber is "unfair."  Specifically, Plaintiffs assert claims for false advertising and unfair

9  competition under the Lanham Act.  Even accepting the Complaint's inaccurate allegations,

10 however, Plaintiffs come nowhere near to stating a claim for relief for several reasons.

11         *First*, the challenged safety statements (aside from being true) constitute classic puffery

12 because they are general and aspirational, not "specific" and "measurable" as Ninth Circuit law

13 requires.  For instance, the challenged statements include:  "Uber is going the distance to put

14 people first," that Uber uses "industry leading standards" and has "best in class safety," and that

15 Uber "works hard to ensure" and is "committed to improving" on safety issues.  Complaint ¶¶ 42-

16 45, 57.  Courts have repeatedly held that statements nearly identical to these (and all the others

17 challenged in this case) are not actionable.  The Court may, and should, end its analysis there.  The

18 Complaint should be dismissed.

19         *Second*, several of the challenged statements do not even constitute commercial

20 advertising.  For example, the Complaint contains an entire section devoted to "Uber's

21 Representations Regarding Safety in Interactions with the Media."  Complaint, at pp. 10-11.

22 Statements to the news media, however, constitute constitutionally protected speech, not

23 commercial advertising under false advertising law.  Similarly, Plaintiffs challenge receipts

24 provided to customers *after* their rides are concluded, claiming the receipts contain hyperlinks to

25 statements Plaintiffs allege are false.  As a matter of law, material provided to customers *post-*

26 *transaction* cannot constitute commercial advertising.  The Court should dismiss the Complaint

27 for these reasons as well.

28

1   ***Third***, Plaintiffs attempt to use California's Unfair Competition Law and False Advertising

2   Law to obtain "restitutionary disgorgement" of Uber's profits.  Complaint ¶ 128.  This fails.  Not

3   only do Plaintiffs lack standing to pursue an Unfair Competition Claim, but restitution is only

4   available to those who have been deprived of a property interest in money obtained by the

5   defendant.  As a matter of law, Plaintiffs' alleged expectation that they would have profited from

6   Uber's customers does not constitute the requisite property interest to obtain restitution.  The

7   Court should thus dismiss Plaintiffs' state law claims or, in the alternative, strike Plaintiffs'

8   request for restitution.

9        For these reasons and those discussed further below, the complaint should be dismissed.

10  **II.        PLAINTIFFS' COMPLAINT FAILS TO PLEAD AN ACTIONABLE STATEMENT**

11       The complaint purports to allege three causes of action:  (1) false advertising under the

12  Lanham Act, 15 U.S.C. § 1125(a); (2) Cal. Bus. & Prof. Code § 17500 (herein the "FAL"); and

13  (3) Cal. Bus. & Prof. Code § 17200 (herein the "UCL").

14       To state a claim for false advertising under the Lanham Act, the UCL and the FAL,

15  Plaintiffs must allege a false or misleading statement that is "likely to deceive a reasonable

16  consumer."  *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW OPX, 2013 WL

17  6729802, at *3 (C.D. Cal. Dec. 16, 2013) (granting motion to dismiss for failure to allege

18  actionably false statement); *see also Zeltiq Aesthetics, Inc. v. BTL Indus., Inc.*, 32 F. Supp. 3d

19  1088, 1099 (N.D. Cal. 2014) ("The ultimate test in both [Lanham Act and UCL] cases is whether

20  the consumers of the good are likely to be deceived.") (internal quotation marks omitted).  In order

21  to be likely to deceive a reasonable consumer, an alleged statement:  (i) must be quantifiable and

22  specific, not general, *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir.

23  2008); (ii) cannot be couched in terms of aspiration or optimism, *City of Pontiac Policemen's &*

24  *Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); and (iii) cannot be taken out of

25  context, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012).

26       If an alleged statement fails any one of these tests, it is not actionable as a matter of law.

27  Here, each of the alleged statements the complaint challenges fails at least one of these tests.  In

28  addition, the complaint attacks several statements that do not even constitute commercial

- 2 -

1   advertising, providing an additional and independent basis to dismiss as to those statements.

2   Viewed from any angle, the complaint should be dismissed.

3           A.      The Alleged Statements Are Not Actionable Because (In Addition To Being True)

4                   They Are Not Quantifiable And Specific

5           "[T]he determination of whether an alleged misrepresentation is a statement of fact or is

6   instead mere puffery is a legal question that may be resolved on a Rule 12(b)(6) motion."  *Newcal,*

7   513 F.3d at 1053 (internal quotation marks omitted).  The key inquiry is whether the challenged

8   statement is "vague and subjective," which renders it non-actionable, or is instead "specific and

9   measurable," which renders it capable of stating a claim.  *Coastal Abstract Serv., Inc. v. First Am.*

10  *Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709

11  F. Supp. 2d 821, 830-32 (C.D. Cal. 2010) (stating, "for a statement to be actionable, it must make

12  a specific and measurable advertisement claim[,]" and holding that statement that competitors'

13  product was "inferior" was non-actionable puffery).  Thus, a claim that a lamp is "far brighter than

14  any lamp ever before offered for home movies" constitutes puffery as a matter of law; whereas a

15  claim that a light bulb has "35,000 candle power and 10-hour life" can be actionable because it is

16  "specific and measurable" and capable of being proven false.  *Coastal Abstract,* 173 F.3d at 731

17  (citations omitted).

18          In addition to not being false and misleading, *none* of the statements that Plaintiffs attack is

19  measurable and specific and thus capable of being proved false.  Instead, they are all general and

20  non-quantifiable.  Indeed, as the chart below shows, many of the statements that Plaintiffs

21  challenge mirror language that courts throughout the nation, including this Court, have expressly

22  held to be non-actionable as a matter of law:

23

24

25

26

27

28

| Challenged Statement (emphasis added by Plaintiffs) | Cases Holding Nearly Identical Statement To Be Non-Actionable Puffery |
|---|---|
| "Uber is 'GOING THE DISTANCE TO PUT PEOPLE FIRST.'" (¶ 42) | *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 992 (S.D. Ohio 2014) (statement that "customer is [company's] *first priority*" was puffery) (emphasis added)<br><br>*In re Bayer AG Sec. Litig.*, No. 03 CIV.1546 WHP, 2004 WL 2190357, at *13 (S.D.N.Y. Sept. 30, 2004) (company's statement that consumer "safety" was its "top priority" was puffery) |
| Uber's efforts to provide "the safest rides on the road." (¶ 42-44) | *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 570-71 (6th Cir. 2004) ("Ford is a worldwide leader in automotive safety" was non-actionable puffery)<br><br>*Hoffman v. A. B. Chance Co.*, 339 F. Supp. 1385, 1388 (M.D. Pa. 1972) ("The general representation that a product 'offered unprecedented safety' is a statement of opinion and is in the nature of seller's 'puffing.'") |
| "We are committed to improving *the already best in class safety* and accountability of the Uber platform, for both riders and drivers." (¶ 45) | *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JFHRL, 2009 WL 3320486, at *7 (N.D. Cal. Oct. 13, 2009) (dismissing plaintiffs' UCL claim because competitor's statement that its products were "'best' in their class" was puffery) |
| Uber's statement that it provides "**BACKGROUND CHECKS YOU CAN TRUST.**" (¶ 56) | *Zapata v. Walgreen Co.*, No. CIV.08-5416(RHK/FLN), 2009 WL 3644897, at *3 n.5 (D. Minn. Nov. 2, 2009) (the phrase "the pharmacy you can trust" was puffery)<br><br>*Brown v. Abbott Labs., Inc.*, No. 10 C 6674, 2011 WL 4496154, at *4 n.3 (N.D. Ill. Sept. 27, 2011) (company's representation that consumers could "count on [its product] for nutrition you can trust" was puffery) |
| "Every ridesharing and livery driver is thoroughly screened through a rigorous process we've developed using *industry-leading* standards." (¶ 57) | *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) ("claims of 'industry leading' growth" are puffery)<br><br>*Intertape Polymer Corp. v. Inspired Technologies, Inc.*, 725 F. Supp. 2d 1319, 1334-35 (M.D. Fla. 2010) ("'industry leading' is classic puffery")<br><br>*Hughes v. Panasonic Consumer Electronics Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839, at *12 (D.N.J. July 21, 2011) ("industry leading" is not a "statement[] of fact, but rather [a] subjective expression[] of opinion") (internal quotation marks omitted) |

Vague and generalized statements like those above – as well as the rest of the statements alleged in the complaint (which are further addressed in the sections that follow) – are deemed non-actionable puffery for good reason. To permit such generalized statements to be the basis of

- 4 -

false advertising claims would chill commercial speech without any countervailing gain to the

consuming public:

> Advertising claims that fall in the category of "puffing" are considered not to
> constitute false advertising and are not in violation of the Lanham Act.  This gives
> advertisers considerable creative leeway in drafting advertising copy . . . [and]
> reflects a policy choice . . . [to] provide[] advertisers and manufacturers
> considerable leeway to craft their statements, allowing the free market to hold
> advertisers and manufacturers accountable for their statements, ensuring vigorous
> competition, and protecting legitimate commercial speech.

5 McCarthy on Trademarks and Unfair Competition § 27:38 (4th ed.) (citations and quotations

omitted); *see also Newcal,* 513 F.3d at 1053 ("The common theme that seems to run through cases

considering puffery in a variety of contexts is that consumer reliance will be induced by specific

rather than general assertions."); *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277,

299, 326 P.3d 253, 266 (2014) (If "any advertisement extolling the superior quality of a company

or its products [were] fodder for litigation[,] [p]roliferation of such litigation would interfere with

the free flow of commercial information.") (internal quotation marks omitted).

Because all of the challenged statements constitute puffery, the complaint should be

dismissed in its entirety.

B.       The Aspirational Statements Are Non-Actionable As A Matter Of Law

It is "well-established" that "statements [that] are explicitly aspirational, with qualifiers

such as 'aims to,' 'wants to,' and 'should,'" are "too general" to induce reasonable reliance. *City

of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); *Glen

Holly Entm't, Inc. v. Tektronix, Inc*., 352 F.3d 367, 379 (9th Cir. 2003) (affirming dismissal of

fraud claim predicated on company's aspirational statement that it places a "high priority" on

"marketing efforts").  As this Court has explained, such "statements of optimism," standing alone,

"add nothing" of substance to a company's claims.  *See Retail Wholesale & Dep't Store Union

Local 338 Retirement Fund v. Hewlett-Packard Co.*, No. 12-CV-04115-JST, 2014 WL 2905387, at

*6 n.2 (N.D. Cal. June 25, 2014) (Tigar, J.) (granting motion to dismiss because defendant's

representation that it was "build[ing] trust" and "conducting business with . . . high ethical

standards" were non-actionable).  They are thus "quintessential" puffery.  *Id.*

- 5 -

On top of being true, several of the alleged statements that the complaint challenges are aspirational and thus non-actionable as a matter of law:

- "Wherever you are around the world, Uber is *committed* to connecting you to the safest ride on the road.  That means setting the strictest safety standards possible, then *working hard to improve* them every day."  (¶ 43 (emphasis added).)

- "Uber *works hard to ensure* that we are connecting riders with the safest rides on the road.  The current *efforts we are undertaking* to protect riders, drivers and cities are *just the beginning*. *We'll continue innovating, refining, and working diligently to ensure we're doing everything we can* to make Uber the safest experience on the road."  (¶ 44 (emphasis added).)

- "We are *committed to improving* the already best in class safety and accountability of the Uber platform, for both riders and drivers."  (¶ 45 (emphasis added).)

- "This Safe Rides Fee supports *continued efforts to ensure* the safest possible platform for Uber riders and drivers"  (¶ 61 (emphasis added).)

- "We *continue to improve* and are *always working hard* to tighten our policies and processes to ensure that Uber remains the safest transportation option available."  (¶ 64 (emphasis added).)

There is simply no way to quantify or prove "false" these generalized statements of aspiration and optimism.  They are subjective at their core, and "general, subjective claim[s]" are non-actionable as a matter of law.  *Newcal*, 513 F.3d at 1053.  This constitutes an additional and independent basis to dismiss the claims as to these alleged statements.

   C.   The Statements Misleadingly Quoted Out Of Context Are Non-Actionable As A Matter Of Law

Throughout their complaint, Plaintiffs have taken words out of context in an attempt to paint a misleading portrait.  The complaint myopically focuses on vague and general statements while ignoring the factual detail that accompanies those statements and gives them context.  This tactic fails as matter of law.  *See Carrea*, 475 F. App'x at 115 (affirming dismissal of UCL claim where plaintiff relied on out-of-context statements); *see also Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (dismissing complaint and holding that "Plaintiff's selective interpretation of individual words or phrases from a product's labeling cannot support a . . . FAL, or UCL claim").

- 6 -

1    For example, Plaintiffs challenge the general and subjective statement:  "Wherever you are

2    around the world, Uber is committed to connecting you to the safest ride on the road.  That means

3    setting the strictest safety standards possible, then working hard to improve them every day."

4    Complaint ¶ 43.  However, Plaintiffs omit the detailed accompanying language *from the very same*

5    *source* describing the facts on which Uber based its opinion.  Specifically, those facts include, but

6    are not limited to:  (1) the ability to request rides directly from the Uber App, which eliminates the

7    need to "wait[] alone on a dark street hoping you can hail a taxi;" (2) user generated reviews of

8    Uber that users can see before accepting a ride; and (3) driver profiles "so you know who's

9    picking you up ahead of time."  Ashley Decl., Ex. B.[1]  *Plaintiffs do not dispute any of these facts*

10   *supporting the challenged statements.*

11   Similarly, Plaintiffs repeatedly claim that Uber's alleged statements regarding "rigorous"

12   and "industry-leading" background checks are misleading.  Complaint ¶¶ 57-61, 68-81.  Putting

13   aside that Uber has rigorous and industry-leading background checks, Plaintiffs ignore the lengthy

14   and detailed description of this background check process which Uber provides on one of the very

15   same websites cited by Plaintiffs.  This includes a detailed explanation of which databases Uber

16   utilizes in conducting its background checks, how far back its background checks go, and what

17   type of prior conduct would automatically disqualify applicants.  Ashley Decl., Ex C.  Thus if

18   anyone wants to know what Uber means by "rigorous" or "industry leading," all they have to do is

19   read the rest of the website from which Plaintiffs have cherry picked language.  And once again,

20   *Plaintiffs do not dispute any of these facts*.  Instead, Plaintiffs attack the generalized and subjective

21   opinion that accompanies it, a ploy that courts have repeatedly rejected.  *See, e.g., Am. Italian*

22   *Pasta Co. v. New World Pasta Co.,* 371 F.3d 387, 392 (8th Cir. 2004) (affirming dismissal of

23   Lanham Act claim where plaintiff failed to allege that a label's fact specific descriptions were

24   false, and "[t]he remaining attributes listed [on the label were] unquantifiable and subject to an

25   individual's fancy"); *Fraker v. KFC Corp.*, 2006 U.S. Dist. LEXIS 79049, *9-11 (S.D. Cal.

26

27   _____
     [1]  "[W]here a plaintiff references and relies on a particular document as part of the moving
     allegations of the complaint . . . the court is justified in looking outside the four corners of the
     complaint, to the document itself . . . ."  *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d

28   1052, 1066-67 (N.D. Cal. 2010).

1   Oct. 19, 2006) (dismissing false advertising suit based on "highly subjective claims not subject to

2   empirical verification" where plaintiff had failed to allege that defendant's fact specific statements

3   were "inaccurate or otherwise misleading").**2**

4        In summary, Plaintiffs cannot manufacture a false advertising claim by citing vague and

5   subjective statements while ignoring the underlying factual material, which Plaintiffs do not

6   dispute.

7        D.    The Statements Made To News Media And Statements Made After Rides Were

8             Completed Are Not Commercial Advertising And Thus Are Non-Actionable

9        To "constitute commercial advertising" under the Lanham Act a representation must be:

10  "1) commercial speech; 2) by a defendant who is in commercial competition with plaintiff; 3) for

11  the purpose of influencing consumers to buy defendant's goods or services. . . . [and 4)]

12  disseminated sufficiently to the relevant purchasing public . . . ." *Rice v. Fox Broad. Co.*, 330 F.3d

13  1170, 1181 (9th Cir. 2003).  Here, Plaintiffs assert claims based on alleged statements that Uber's

14  representatives made to independent media outlets (Complaint ¶¶ 62-65) and alleged statements

15  contained in customer receipts (*Id.* ¶¶ 47-54), neither of which satisfy the Ninth Circuit test.**3**

16        1.    Statements made to the news media are protected speech

17        Statements made to the news media "are not commercial speech."  *Boule v. Hutton*, 328

18  F.3d 84, 91 (2d Cir. 2003).  Indeed, because such statements "contribute to reporters' discussion of

19  [ ] issue[s] of public importance," they are protected under the First Amendment.  *Id.*

20  Accordingly, courts have rejected false advertising claims predicated on quotes that were

21  disseminated through news articles not authored by the defendant.  For example, in *TYR Sport, Inc.*

22  *v. Warnaco Swimwear, Inc.*, the court held that a statement made on behalf of a swimwear

23

24        **2** In the one instance when Plaintiffs do actually address a *specific* and *factual* statement by
    Uber, Plaintiffs are unable to allege falsity.  Specifically, Plaintiffs criticize Uber's statement that
25  its users do not have to "wait[] alone on a dark street hoping [they] can hail a taxi" – thus
    providing for "safe pickups."  Complaint ¶ 46.  But far from challenging this factual statement as
26  false, Plaintiffs concede (as they must) that Uber's customers request their rides by using the Uber
    App (Complaint ¶ 5), not from street hailing as is often done with taxis.

27        **3** Because Plaintiffs' UCL and FAL claims are based on the same false advertising theory,
    Complaint ¶¶ 123, 132 ("Uber's false and misleading advertising practices have injured
28  Plaintiffs"), they also cannot be predicated on such statements.  *See Rice*, 330 F.3d at 1182.

1  manufacturer to a sports reporter extolling the advantages that competitive swimmers could gain

2  by using its products was non-actionable.  709 F. Supp. 2d 802, 818 (C.D. Cal. 2010).  The court

3  explained that the "[t]he article [was] clearly protected speech," and the defendant's statements

4  were likewise protected because they were "inextricably intertwined" with the topic of the

5  reporter's article.  *Id.*; *see also Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir.

6  2002) ("If speech is not 'purely commercial'—that is, if it does more than propose a commercial

7  transaction—then it is entitled to full First Amendment protection."); *Nat'l Servs. Grp., Inc. v.*

8  *Painting & Decorating Contractors of Am., Inc.*, No. SACV06-563CJC(ANX), 2006 WL

9  2035465, at *5 (C.D. Cal. July 18, 2006) ("Where particular speech includes commercially-

10  motivated statements that are inextricably intertwined with otherwise fully protected speech, the

11  entirety of the speech may be fully protected.") (internal quotations omitted).

12      The same is true here.  Plaintiffs challenge statements made by Uber representatives that

13  appeared in online articles by two local NBC news affiliates and one that appeared in a

14  Mashable.com article.  Complaint ¶¶ 63-65; Ashley Decl. ¶¶ 6-8, Exs. D, E, F.[4]  These statements,

15  which were not false and misleading, addressed Uber's general safety standards, which was the

16  topic of the articles in which they appeared.  *Id; see TYR Sport, Inc.,* 709 F. Supp. 2d at 818

17  (defendant's statements were protected where they were "inextricably intertwined" with the

18  subject of the article).  Further, these articles were written by independent media outlets (not

19  Uber), and Uber had no control over their ultimate content.  *See Id.* at 829-30 (holding that

20  defendant's statements were not commercial speech where they appeared in "general news

21  publications" who retained editorial control).  The complaint thus improperly attempts to regulate

22  the content of news publications – "a forum that has traditionally been granted full protection

23  under the First Amendment" – under the guise of a false advertising claim.  *Boule*, 328 F.3d at 91.

24

25      [4] Mashable.com is an online digital news website.  Because Plaintiffs rely on these articles
26  in their complaint, they are "incorporate[ed] by reference," and the Court may consider them on a
   motion to dismiss.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[T]he 'incorporation
27  by reference' doctrine . . . permits [courts] to take into account documents whose contents are
   alleged in a complaint.") (internal quotation marks omitted); *see also In re Gilead Sciences Sec.*
28  *Litig.*, No. C03-4999 MJJ, 2005 WL 181885, at *3 (N.D. Cal. Jan. 26, 2005) (taking notice of a
   "news article" which was "explicitly referenced in the Amended Complaint").

1    This provides an independent and additional basis to dismiss the claims based on these alleged

2    statements.

3                    2.      Receipts referring to the "Safe Rides Fee" do not propose a future

4                            commercial transaction and are thus not actionable

5           Plaintiffs also rely on receipt references to a "Safe Rides Fee," an itemized $1 charge that

6    appears on the receipt a user receives via email ***after*** completing a ride using the Uber App.

7    Complaint ¶¶ 47-50.  The receipts contain a "hyperlinked question mark (?) next to the word 'Safe

8    Rides Fee,'" which recipients can click on to view an explanation of what this fee entails.  *Id.*

9    ¶¶ 49-50.

10          Even assuming that Uber's statements regarding the "Safe Rides Fee" are somehow

11   misleading (they are not), these statements do not constitute "commercial speech" as a matter of

12   law.  As the Ninth Circuit has made clear, "[t]he core notion of commercial speech is 'speech

13   which does no more than propose a commercial transaction.'"  *Rice*, 330 F.3d at 1181.  Further, to

14   qualify as an "advertisement," a statement must be made "for the purpose of influencing

15   consumers to buy defendant's goods or services."  *Id.*  Uber's statements regarding the Safe Rides

16   Fee do neither.  Rather, these statements merely explain to users, *who have already used Uber*,

17   why a particular charge appears on their receipts.  Statements that "relate to commercial

18   transactions that have already occurred[] . . . and . . . require no action by the customer" as a matter

19   of law do not constitute advertisements.  *See Gonzalez v. Allstate Ins. Co.*, No. CV 04-

20   1548FMCPJWX, 2005 WL 5891935, at *8 (C.D. Cal. Aug. 2, 2005) (information purchasers

21   received regarding their insurance policies after the policies were purchased did not qualify as

22   advertisements).

23   **III.    PLAINTIFFS ARE NOT ENTITLED TO RELIEF UNDER THE UCL OR FAL**

24          Plaintiffs seek Uber's profits under the UCL and FAL, claiming that they have been

25   injured by Uber's allegedly unfair business practices.  However, Plaintiffs are not entitled to this

26   relief.  Not only do Plaintiffs lack standing to pursue their UCL claim, but they also cannot seek

27   restitution under the UCL and FAL because they do not have a property interest in Uber's profits.

28

1        A.        Plaintiffs Lack Standing

2        "In order to state a claim for a violation of the [UCL], a plaintiff must allege that the

3    defendant committed a business act that is either fraudulent, unlawful, or unfair." *Levine v. Blue*

4    *Shield of California*, 189 Cal. App. 4th 1117, 1136, 117 Cal. Rptr. 3d 262, 277 (2010).  Here,

5    however, Plaintiffs have failed to allege a cognizable injury under any of these three prongs.

6        ***First***, Plaintiffs lack standing to seek relief under the UCL's fraud prong because they do

7    not allege that they relied on Uber's allegedly false or misleading advertising.  Under California

8    law, a plaintiff who asserts "a claim of misrepresentation as the basis of his or her UCL action

9    must demonstrate actual reliance on the allegedly deceptive or misleading statements, in

10   accordance with well-settled principles regarding the element of reliance in ordinary fraud

11   actions." *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 207 P.3d 20, 26 (2009).  As multiple

12   courts in this district have held, this means that plaintiffs must allege their "own reliance" upon on

13   the "alleged misrepresentations," not the reliance of "third parties." *ZL Technologies, Inc. v.*

14   *Gartner, Inc.,* No. CV 09-02393 JF (RS), 2009 WL 3706821, at *11 (N.D. Cal. Nov. 4, 2009)

15   (dismissing plaintiffs UCL and FAL claims where they did not allege reliance on competitor's

16   misrepresentations); *see also O'Connor v. Uber Technologies, Inc.*, No. C-13-3826 EMC, 2014

17   WL 4382880, at *8 (N.D. Cal. 2014) (emphasis in original) ("plaintiffs must allege their *own*

18   reliance—not the reliance of third parties—to have standing under the UCL").

19       Here, Plaintiffs' claims are predicated entirely on alleged misrepresentations targeted at

20   Uber's *customers*, not Plaintiffs.  *See, e.g.*, Complaint ¶ 135 ("Uber's business acts and

21   practices . . . are [] fraudulent within the meaning of California's Unfair Competition Law, as

22   customers are inaccurately led to believe that UberX offers a safer alternative to rides in Plaintiffs'

23   taxi cabs . . . .").  Nowhere do Plaintiffs allege that they themselves were misled by Uber's

24   advertising regarding its safety efforts.  Accordingly, they lack standing. *See ZL Technologies,*

25   *Inc.*, 2009 WL 3706821, at *11.

26       ***Second***, Plaintiffs lack standing under the UCL's unlawful and unfairness prongs for the

27   same reason.  Plaintiffs' unlawful and unfairness claims are predicated on the same alleged

28   misconduct as their fraud claim, namely Uber's allegedly false and misleading statements

- 11 -

1   regarding its safety standards.  Complaint ¶ 133 ("Uber's business acts and practices" are

2   "unlawful" because "they constitute false advertising."); Complaint ¶ 134 ("Uber's business acts

3   and practices" are "unfair" because they "mislead customers in various ways.").  But a plaintiff

4   cannot circumvent the UCL's reliance requirement simply by recasting his or her fraud claim as an

5   unlawful or unfairness claim.  As the California Supreme Court has held, a plaintiff must plead

6   reliance in order to have standing under the UCL's unlawful prong, where "the predicate

7   unlawfulness is misrepresentation and deception."  *See Kwikset Corp. v. Superior Court*, 51 Cal.

8   4th 310, 327 n.9, 246 P.3d 877, 888 n.9 (2011) (internal quotations omitted).  This is true for the

9   unfairness prong as well.  *See In re Facebook PPC Adver. Litig.*, No. 5:09-CV-03043-JF, 2010

10  WL 3341062, at *11 (N.D. Cal. Aug. 25, 2010) ("Because Plaintiffs' allegations . . . are premised

11  on a fraud theory involving misrepresentations . . . they must allege reliance, irrespective of

12  whether the claims are asserted under the fraud prong or the unfair prong of the UCL.").

13      In sum, because Plaintiffs have not pled (and indeed cannot plead) that they relied on any

14  of Uber's challenged statements regarding safety, they lack standing.  The Court should therefore

15  dismiss Plaintiffs' UCL claim.

16      B.      Plaintiffs Cannot Seek Restitution Under The UCL Or FAL

17      Even assuming that Plaintiffs have standing, they are not entitled to monetary relief under

18  the UCL or FAL.  Plaintiffs claim that they are entitled to "restitution and restitutionary

19  disgorgement of all profits generated from sums wrongfully obtained by Uber" under the UCL and

20  FAL on account of Uber's allegedly false advertising practices.  Complaint ¶¶ 128, 138.

21  However, under controlling California authority, Plaintiffs have no claim for restitution because

22  they have no "direct" or "vested" ownership interest in Uber's profits.  *See Korea Supply Co. v.*

23  *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *see, e.g.*, *Am. Master Lease LLC v. Idanta*

24  *Partners, Ltd.*, 225 Cal. App. 4th 1451, 1493 n.29 (2014) (nonrestitutionary disgorgement not

25  available under § 17200 or § 17500).

26      Restitutionary relief under the UCL and FAL is limited to the "return of money or other

27  property obtained through an improper means *to the person from whom the property was taken*."

28  *Clark v. Superior Court*, 50 Cal. 4th 605, 614 (2010) (emphasis added).  Here, Plaintiffs do not

- 12 -

1    allege that Uber has obtained money directly from them.  Rather, the crux of Plaintiffs' complaint

2    is that Uber has received money from customers who, according to Plaintiffs, would have taken

3    Plaintiffs' taxis absent Uber's alleged false advertising.  Indeed, Plaintiffs stress that they have no

4    direct business dealings with Uber in arguing why they are not bound by any arbitration agreement

5    that Uber has with its users.  Complaint ¶¶ 107-109.

6           Further, Plaintiffs have no vested interest in Uber's profits.  The California Supreme

7    Court's decision in *Korea Supply* is directly on point.  There, the plaintiff alleged that its

8    competitor had wrongfully obtained business by bribing foreign government officials.  *Korea*

9    *Supply,* 29 Cal. 4th at 1140.  It sought restitutionary disgorgement on the theory that it had a vested

10   interest in the profits that it would have received absent the defendant's wrongful behavior.  The

11   Court rejected this argument, holding that "[s]uch an attenuated expectancy [interest] cannot . . .

12   be likened to 'property'" and is thus not recoverable via restitution.  *Id.* at 1150.

13          The same is true here.  Plaintiffs cannot claim that they have a property right in the revenue

14   that Uber has earned by attracting customers to its services.  Courts in this circuit have routinely

15   dismissed or struck similar claims for restitution brought by plaintiffs seeking their competitors'

16   profits.  *See, e.g., Bizcloud, Inc. v. Computer Sciences Corp.*, No. C-13-05999 JCS, 2014 WL

17   1724762, at *4 (N.D. Cal. Apr. 29, 2014) (dismissing UCL claim that sought disgorgement of

18   profits by competitor); *SkinMedica, Inc. v. Histogen, Inc.*, 869 F. Supp. 2d 1176, 1186 (S.D. Cal.

19   2012) (holding that "an expectancy or contingent interest in future profits or value" does not

20   entitle a plaintiff to restitution under the UCL); *Lee Myles Associates Corp. v. Paul Rubke*

21   *Enterprises, Inc.*, 557 F. Supp. 2d 1134, 1144 (S.D. Cal. 2008) (striking a plaintiff's demand for

22   restitution where "[t]he Complaint does not allege that Plaintiff seeks the return of any money or

23   other property Defendants obtained from Plaintiff or in which Plaintiff had a vested interest").

24   This Court should likewise strike Plaintiffs' claims for restitutionary relief.

25   **IV.    CONCLUSION**

26          Plaintiffs' complaint relies solely on statements that are non-actionable as a matter of law,

27   including statements that are protected by the First Amendment.  Plaintiffs have failed to support

28   their allegation that a reasonable consumer would be misled by the puffery repeatedly cited in

1   their complaint.  Accordingly, this Court should reject Plaintiffs' attempt to assert a legal interest

2   in Uber's profits under the guise of a false advertising claim and grant Uber's motion to dismiss.

3   Dated:  May 14, 2015                              IRELL & MANELLA LLP
                                                      Andra Barmash Greene
4                                                     A. Matthew Ashley

5

6                                                     By:  /s/ A. Matthew Ashley

7                                                           A. Mathew Ashley
                                                            Attorneys for Defendants
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
(Case No. 3:15-cv-01257-JST)

1

## ECF ATTESTATION

2    I, Michael D. Harbour, am the ECF user whose ID and password are being used to file

3 **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM**

4 **OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**.  I hereby attest that I received

5 authorization to insert the signatures indicated by a conformed signature (/s/) within this efiled

6 document.

7                                  By:      /s/  Michael D. Harbour

8                                                     Michael D. Harbour

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
(Case No. 3:15-cv-01257-JST)