1 | BRUCE L. SIMON (Bar No. 96241)
   bsimon@pswlaw.com
2 | BENJAMIN E. SHIFTAN (Bar No. 265767)
   bshiftan@pswlaw.com
3 | **PEARSON, SIMON & WARSHAW, LLP**
   44 Montgomery Street, Suite 2450
4 | San Francisco, California 94104
   Telephone: (415) 433-9000
5 | Facsimile:  (415) 433-9008

6 | CHRISTOPHER B. DOLAN (Bar No. 165358)
   chris@cbdlaw.com
7 | **THE DOLAN LAW FIRM**
   1438 Market Street
8 | San Francisco, California 94102
   Telephone: (415) 421-2800
9 | Facsimile:  (415) 421-2830

10 | Attorneys for Plaintiffs

11 | **UNITED STATES DISTRICT COURT**

12 | **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

| | |
|---|---|
| 13  L.A. Taxi Cooperative, Inc. dba Yellow Cab | CASE NO. 3:15-cv-01257-JST |
| 14  Co.; Administrative Services SD, LLC dba Yellow Radio Service; All Yellow Taxi, Inc. | **PLAINTIFFS' OPPOSITION TO** |
| 15  dba Metro Cab; American Cab, LLC; American Cab, LLC dba Pomona Valley | **DEFENDANTS' MOTION TO DISMISS** |
| 16  Yellow Cab; Bell Cab Company, Inc.; Big Dog City Corporation dba Citywide Dispatch, | Date:    July 9, 2015 |
| 17  Citywide Taxi, and Big Dog Cab; Cabco Yellow, Inc. dba California Yellow Cab; C&J | Time:    2:00 p.m. |
| 18  Leasing, Inc. dba Royal Taxi; G&S Transit Management, Inc.; Gorgee Enterprises, Inc.; | Crtrm.:  9, 19th Floor |
| 19  LA City Cab, LLC; Long Beach Yellow Cab Co-operative, Inc.; Network Paratransit | |
| 20  Systems, Inc.; South Bay Co-operative, Inc. dba United Checker Cab; Taxi Leasing, Inc. | |
| 21  dba Yellow Cab of Ventura County; Tri-City Transportation Systems, Inc.; Tri Counties | |
| 22  Transit Corporation dba Blue Dolphin Cab of Santa Barbara, Yellow Cab of Santa Maria, | |
| 23  and Yellow Cab of San Luis Obispo; and Yellow Cab of South Bay Co-operative, Inc. | |
| 24  dba South Bay Yellow Cab, | |
| 25              Plaintiffs, | |
|             vs. | |
| 26  Uber Technologies; Rasier, LLC; and Rasier-CA, LLC, | |
| 27              Defendants. | |
| 28 | |

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF ISSUES TO BE DECIDED ...............................................................1

II. INTRODUCTION ........................................................................................................2

III. SHORT STATEMENT OF FACTS ALLEGED IN THE COMPLAINT....................3

IV. ARGUMENT ..............................................................................................................4

    A.     STANDARD ON A MOTION TO DISMISS A FALSE ADVERTISING
              CLAIM ..............................................................................................................4

    B.     THE ALLEGED MISREPRESENTATIONS ARE ACTIONABLE ......................5

          1.     The Alleged Misrepresentations Are Actionable Statements, Not
                Puffery ..................................................................................................5

          2.     Uber's Advertising Contains More Than Mere "Aspirational"
                Statements ............................................................................................9

          3.     Plaintiffs Do Not Take Uber's Advertising "Out Of Context" ...................10

          4.     Uber's Misrepresentations Regarding The Safety Of Uberx Rides
                Qualify As Commercial Speech ................................................................11

                 (a)     Uber's Statements to the Media Qualify as Commercial
                       Speech .......................................................................................11

                 (b)     The Misrepresentations Hyperlinked in the Receipts
                       Explaining the "Safe Rides Fee" Are Actionable Statements..........14

    C.     PLAINTIFFS CAN PURSUE RELIEF UNDER THE CALIFORNIA
              STATUTES ......................................................................................................15

          1.     Plaintiffs Have Standing Under The California Unfair Competition
                Law .......................................................................................................15

           2.     Uber's Attempt To Strike Plaintiffs' Request For Restitution Under
                The California Statutes Is Premature ........................................................16

V. CONCLUSION .........................................................................................................17

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

i

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adler v. Royal Cruise Line, Ltd.*,
  No. C 95-1304 CW, 1996 WL 438799 (N.D. Cal. Mar. 20, 1996)..........................................6

*Anunziato v. eMachines, Inc.*,
  402 F.Supp.2d 1133, 1140-1141 (C.D. Cal. 2005) ...................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................4

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*,
  No. C08-04397 WHA, 2008 WL 6742224 (N.D. Cal. Dec. 18, 2008)....................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................2, 4

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983) ...............................................................................11, 12

*Brown v. Abbott Labs., Inc.*,
  No. 10 C 6674, 2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) ........................................8

*Cont'l Airlines, Inc. v. McDonnell Douglas Corp.*,
  216 Cal.App.3d 388 (1989)...........................................................................7

*Dex Media West, Inc. v. City of Seattle*,
  696 F.3d 952 (9th Cir. 2012).......................................................................12

*Epicor Software Corp. v. Alternative Tech. Solutions, Inc.*,
  No. SACV 13-00448-CJC, 2013 WL 2382262 (C.D. Cal. May 9, 2013) ...........................4, 15

*Giles v. Inflatable Store, Inc.*,
  No. 07-CV-00401-PAB-KLM, 2009 WL 961469 (D. Colo. Apr. 6, 2009)..............................9

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
  343 F.3d 1000 (9th Cir.) *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir.
  2003)................................................................................................7

*Gonzalez v. Allstate Insurance Co.*,
  No. CV 04-1548FMCPJWX, 2005 WL 5891935 (C.D. Cal. Aug. 2, 2005) .........................14

*Greater Houston Transp. Co. v. Uber Technologies, Inc.*,
  No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015)...................................8

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*,
    708 F.Supp.2d 1209 (D.N.M. 2010) ...................................................................... 9

*Hauter v. Zogarts*,
    14 Cal.3d 104 (1975)................................................................................................. 6, 7

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,
    No. C 14-0437 CW, 2015 WL 3377662 (N.D. Cal. Feb. 24, 2015) ................................ 15, 16

*Hoffman v. A. B. Chance Co.*,
    339 F.Supp. 1385 (M.D. Pa. 1972) ...................................................................... 8, 9

*Hughes v. Panasonic Consumer Electronics Co.*,
    No. CIV.A. 10-846 SDW, 2011 WL 2976839 (D.N.J. July 21, 2011) ....................................... 8

*In re Bayer AG Sec. Litig.*,
    No. 03 CIV.1546 WHP, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ................................... 8

*In re Cornerstone Propane Partners, L.P.*,
    355 F.Supp.2d 1069 (N.D. Cal. 2005) ...................................................................... 8

*In re Facebook PPC Advertising Litigation*,
    No. 5:09-CV-03043-JF, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010)....................................... 15, 16

*In re Ford Motor Co. Sec. Litig., Class Action*,
    381 F.3d 563 (6th Cir. 2004)...................................................................................... 8

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ............................................................................................... 15

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Products Liab. Litig.*,
    890 F.Supp.2d 1210 (C.D. Cal. 2011)...................................................................... 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*,
    754 F.Supp.2d 1145 (C.D. Cal. 2010)...................................................................... 7

*In re Vioxx Class Cases*,
    180 Cal.App.4th 116 (2009)...................................................................................... 16

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
    No. C 12-05523 WHA, 2013 WL 1007666 (N.D. Cal. Mar. 13, 2013)..................................... 16

*Intertape Polymer Corp. v. Inspired Technologies, Inc.*,
    725 F.Supp.2d 1333-1334 (M.D. Fla. 2010) .......................................................... 8

*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011)...................................................................................... 11, 12

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Kasky v. Nike, Inc.*,
   27 Cal.4th 939 (2002)................................................................................................5, 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal.4th 1134, 1149 (2003) ...................................................................................... 16

*Kwan Software Eng.'s, Inc. v. Foray Technologies, LLC*,
   No. C 12-03762 SI, 2014 WL 572290 (N.D. Cal. Feb. 11, 2014) ................................. 5

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) .................................................................................................. 15

*Luxpro Corp. v. Apple Inc.*,
   No. C 10-03058 JSW, 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011) ......................... 17

*Luxul Tech. Inc. v. Nectarlux, LLC*,
   No. 14-CV-03656-LHK, 2015 WL 352048 (N.D. Cal. Jan. 26, 2015)........................ 16

*MGA Entm't, Inc. v. Mattel, Inc.*,
   No. CV05-2727NM(RNBX), 2005 WL 5894689 (C.D. Cal. Aug. 26, 2005) ...................... 17

*O'Connor v. Uber Technologies, Inc.*,
   58 F.Supp.3d 989 (N.D. Cal. 2014) ............................................................................ 15

*Osborne v. Subaru of Am., Inc.*,
   198 Cal.App.3d 646 (1988)........................................................................................... 6

*Retail Wholesale & Dep't Store Union Local 338 Retirement Fund v. Hewlett-Packard Co.*,
   52 F.Supp.3d 961 (N.D. Cal. 2014) ............................................................................ 10

*Risner v. Regal Marine Indus., Inc.*,
   8 F.Supp.3d 959, 992 (S.D. Ohio 2014) ....................................................................... 8

*Siracusano v. Matrixx Initiatives, Inc.*,
   585 F.3d 1167 (9th Cir. 2009)....................................................................................... 4

*SKEDKO, Inc. v. ARC Products, LLC*,
   No. 3:13-CV-00696-HA, 2014 WL 2465577 (D. Or. June 2, 2014) ...................... 12, 13

*Skydive Arizona, Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012)....................................................................................... 5

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997)....................................................................................... 6

*Star Child II, LLC v. Lanmar Aviation, Inc.*,
   No. 3:11-CV-01842 AWT, 2013 WL 1103915 (D. Conn. Mar. 16, 2013) .................... 9

*Tietsworth v. Sears, Roebuck & Co.*,
   No. 5:09-CV-00288, 2009 WL 3320486, at *7 n.5 (N.D. Cal. Oct. 13, 2009) ............. 8

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

iv

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*,
    709 F.Supp.2d 821 (C.D. Cal. 2010)......................................................................13

*United States v. Schiff*,
    379 F.3d 621 (9th Cir. 2004).................................................................................12

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
    No. 2:09CV02067-MCE-GGH, 2010 WL 1611398 (E.D. Cal. Apr. 20, 2010) ..............15, 16

*Walter v. Hughes Commc'ns, Inc.*,
    682 F.Supp.2d 1031 (N.D. Cal. 2010) .....................................................................5

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)..............................................................................4, 5

*Zapata v. Walgreen Co.*,
    No. CIV.08-5416(RHK/FLN), 2009 WL 3644897 (D. Minn. Nov. 2, 2009)........................8

*ZL Technologies, Inc. v. Gartner, Inc.*,
    No. CV 09-02393 JF (RS), 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009)............................15

**STATUTES AND RULES**

15 U.S.C. § 1125 ........................................................................................................1

California Business and Professions Code, § 17200........................................................1

California Business and Professions Code, § 17500........................................................1

Fed. R. Civ. Proc. 12(b)(6)............................................................................................4

Fed. R. Civ. Proc. 15(a)(2) ..........................................................................................18

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

# I. STATEMENT OF ISSUES TO BE DECIDED

1.     Whether Plaintiffs'[1] allegations of Uber's[2] false and misleading statements about specific characteristics of the safety of the UberX service plausibly give rise to liability under the Lanham Act (15 U.S.C. § 1125), the California Unfair Competition Law (California Business and Professions Code, § 17200), and/or the California False Advertising Law (California Business and Professions Code, § 17500).[3]

2.     Whether Uber's false and misleading statements regarding safety qualify as commercial speech when Uber issues these statements in order to induce consumers to use the UberX service, and not to address a matter of public concern.

3.     Whether Plaintiffs (a) have standing under the UCL, and (b) can proceed with their request for restitution under the UCL and/or FAL.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

---

[1] "Plaintiffs" signifies all taxi cab companies named as Plaintiffs in the Complaint.

[2] "Uber" signifies all three defendants: Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC.

[3] The California statutes are hereinafter referred to as the "UCL" and "FAL," respectively.

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

## II. __INTRODUCTION__

In a retreat from an essential premise of its marketing campaign, Uber now resorts to arguing that its safety representations are mere puffery and mean nothing.  This is a stunning concession on its part.

Plaintiffs filed this lawsuit because they have lost customers and suffered major reputational harm as a result of Uber's false advertising—a marketing campaign intended to deceive the public and pry market share away from the taxi cab industry.  By touting its "industry-leading" background checks and insisting that it imposes the "strictest safety standards possible," Uber convinces consumers that UberX rides are safer than Plaintiffs' taxi cabs.  These passengers, however, are not as safe in UberX cars.  UberX drivers are not fingerprinted.  Instead, they are subjected only to background checks that, in the words of the San Francisco District Attorney, are "completely worthless."[4]  Moreover, the drivers are never trained, nor required to take a written exam.  In short, the drivers are not required to do the things that Plaintiffs' taxi cab drivers must do in order to get behind the wheel.

Uber offers three principal arguments in support of dismissal.  First, Uber contends that the advertising about safety is nothing more than harmless puffery.  Second, Uber suggests that the statements quoted in the media, as well as representations e-mailed to riders after they take UberX rides, are not actionable as commercial speech.  Third, Uber contends that Plaintiffs—who are competitors of Uber, not Uber customers—lack standing under the UCL, and are not entitled to restitution under either the UCL or FAL.

Each of these arguments is without merit.  The challenged statements, which misrepresent specific aspects of Uber's safety protocol, are not puffery.  To the contrary, the advertising pertains to a subject matter—passenger safety—that is, literally, a matter of life or death.  As such, Plaintiffs have more than "nudged . . . across the line" their claim that consumers rely upon these representations in spurning Plaintiffs' taxi cabs for UberX rides. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Second, each of the statements qualifies as commercial speech, given

---

[4] *See* ECF No. 1 at ¶ 101 n.2.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  that Uber issues the statements in a plain effort to generate business. Third, Plaintiffs state claims

2  under the California statutes. Plaintiffs adequately allege that they have suffered injury as a result

3  of the misrepresentations to consumers. Furthermore, Uber fails to demonstrate as a matter of law

4  that Plaintiffs may not be entitled to restitution in the form of certain profits earned by Uber.

5  Plaintiffs have stated viable claims for false advertising and unfair competition. The

6  motion to dismiss should be denied.

7  ### III. SHORT STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

8  Plaintiffs allege that Uber's advertising campaign violates the Lanham Act, the UCL, and

9  the FAL. Plaintiffs properly allege this in several steps.

10  First, Plaintiffs identify specific false and misleading statements. For example, Plaintiffs

11  note that Uber has advertised to consumers that it "set[s] the strictest safety standards possible,"

12  requires its drivers to "go through a rigorous background check that leads the industry," and

13  "connect[s] riders with the safest rides on the road." (ECF No. 1 at ¶¶ 43, 44, and 59.) Further,

14  Plaintiffs recount Uber's trumpeting that its background checks set a "comprehensive and new

15  industry standard"—a "standard" that Uber boasts (in a blatant effort to disparage Plaintiffs) is

16  "often more rigorous than what is required to become a taxi driver." (*Id.* at ¶ 58.)

17  Later in the Complaint, Plaintiffs explain precisely *why* these representations are false and

18  misleading. For example, Plaintiffs illustrate how Uber's claim that it insists upon "industry-

19  leading" background checks for its UberX drivers is off-base, given that Uber does not require

20  Live Scan fingerprinting—the "gold standard" of background checks. (*Id.* at ¶¶ 57, 70.) The

21  Complaint details the ways in which Live Scan is superior to Uber's background checks, including

22  that Live Scan (1) "analyzes the information in Department of Justice and FBI systems that have

23  no time-based or jurisdictional limitations," and (2) "continuously refreshes the results of a

24  person's background check . . . ." (*Id.* at ¶ 70.)[5]

25

26  _____

[5] Plaintiffs even explain how Hirease, the company that carries out Uber's background checks,
27  acknowledges that fingerprint-based background checks (like Live Scan) are more reliable than
those that Uber requires. (*See* ECF No. 1 at ¶ 76.)
28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1    Similarly, Plaintiffs detail how Uber's claims that it "set[s] the strictest safety standards

2    possible" and connects passengers with "the safest rides on the road" are inaccurate. (*Id. at* ¶¶ 43,

3    44.)  The Complaint documents how UberX drivers do not receive training, and are not required to

4    pass a written examination. (*Id.* at ¶¶ 84-85, 88-89.)  Similarly, the Complaint illustrates how

5    UberX vehicles—unlike Plaintiffs' taxi cabs, which must undergo detailed vehicle inspections—

6    are ready to hit the road as soon as the driver *takes a picture* of a 19-point vehicle inspection form,

7    and e-mails it to Uber. (*Id.* at ¶¶ 90-93.)

8    Finally, Plaintiffs allege how they are harmed by Uber's false and misleading statements.

9    Plaintiffs explain how Uber's statements convince customers that UberX offers a safer ride than

10   Plaintiffs' taxi cabs, causing Plaintiffs to suffer lost revenue, decreased profits, and significant

11   reputational harm.  (*Id.* at ¶¶ 102-106.)

12                            **IV.  <u>ARGUMENT</u>**

13   **A.    STANDARD ON A MOTION TO DISMISS A FALSE ADVERTISING CLAIM**

14   In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept the plaintiffs'

15   allegations as true and construe them in the light most favorable to the plaintiffs." *Siracusano v.*

16   *Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009).  A plaintiff need not plead "detailed

17   factual allegations" to survive a motion to dismiss; the allegations must be "enough to raise a right

18   to relief above the speculative level." *Twombly*, *supra*, 550 U.S. at 555.  This means that a

19   complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is

20   plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, *supra*, 550

21   U.S. at 570).  Put differently, as noted in the Introduction, a complaint survives a motion to

22   dismiss where the plaintiffs "nudge[] their claims across the line from conceivable to plausible."

23   *Twombly*, *supra*, 550 U.S. at 570.

24   Courts are particularly reluctant to grant motions to dismiss in false advertising cases.

25   "[D]etermination of whether a business practice is deceptive is usually a question of fact not

26   appropriate for decision at the pleadings stage." *Epicor Software Corp. v. Alternative Tech.*

27   *Solutions, Inc.*, No. SACV 13-00448-CJC, 2013 WL 2382262, at *4 (C.D. Cal. May 9, 2013)

28   (*citing Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (reversing district court's

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  grant of motion to dismiss false advertising claim)).  As this District recently stated, "the general

2  rule is that whether the disparity between actual services and representations about those services

3  is 'deceptive' under the FAL, [or] UCL . . . is 'a question of fact which requires 'consideration and

4  weighing of evidence from both sides' and which usually cannot be made on [a motion to

5  dismiss].'" *Walter v. Hughes Commc'ns, Inc.*, 682 F.Supp.2d 1031, 1044 (N.D. Cal. 2010)

6  (citation omitted).

7        This case is not the "rare situation" in which granting a motion to dismiss false advertising

8  claims would be appropriate. *See Williams*, *supra*, 552 F.3d at 939.

9  **B.     THE ALLEGED MISREPRESENTATIONS ARE ACTIONABLE**

10        A statement is actionable under the Lanham Act when the "'statement actually deceive[s]

11  or has the tendency to deceive a substantial segment of its audience.'" *Skydive Arizona, Inc. v.

12  Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citations omitted).  Similarly, the UCL and

13  FAL proscribe advertising which is "'false,'" "'actually misleading,'" and even advertising

14  "'which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Williams*, *supra*,

15  552 F.3d at 938 (*quoting Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)).[6]

16        As recounted above in Section III, the Complaint diligently explains how Uber's

17  advertising campaign violates the false advertising and unfair competition laws.  Uber's motion to

18  dismiss does not address this head-on.  Instead, Uber tries to escape liability by arguing that (1) its

19  advertising is quintessential puffery, (2) certain statements are purely "aspirational," (3) Plaintiffs

20  have taken Uber's statements "out of context," and (4) several of the false and misleading

21  statements do not constitute commercial speech.  As explained below, each of these arguments

22  lacks merit.

23        **1.     The Alleged Misrepresentations Are Actionable Statements, Not Puffery**

24        "A statement is puffery if the claim is *extremely unlikely* to induce consumer reliance."

---

[6] The analysis for whether the advertising is actionable is substantially the same under the Lanham Act, the UCL, and the FAL. *Kwan Software Eng.'s, Inc. v. Foray Technologies, LLC*, No. C 12-03762 SI, 2014 WL 572290, at *3 (N.D. Cal. Feb. 11, 2014).

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, No. C08-04397 WHA, 2008 WL 6742224,

2   at *3 (N.D. Cal. Dec. 18, 2008) (emphasis added).  "While product superiority claims that are

3   vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or

4   absolute characteristics of a product are actionable.'" *Southland Sod Farms v. Stover Seed Co.*,

5   108 F.3d 1134, 1145 (9th Cir. 1997) (citations omitted).

6            Plaintiffs allege that Uber misrepresents specific characteristics of the UberX service.

7   Uber, whose business hinges on convincing consumers to get into a stranger's car, misrepresents

8   what is plausibly a very important factor to these consumers – *their own safety*.  Specifically, as

9   discussed above, Uber misleads consumers via an advertising campaign that touts Uber's

10  "industry-leading" background checks (when, in reality, Uber does not even fingerprint its

11  drivers), and proclaims that Uber "set[s] the strictest safety standards possible" (when, in reality,

12  Uber requires zero driver safety training, does not administer a written exam for drivers, and asks

13  for only a picture of a vehicle inspection form).

14           The fact that the misrepresentations pertain to consumers' safety is alone sufficient to

15  withstand dismissal.  Courts in the Ninth Circuit and California courts alike have stated that false

16  and misleading statements regarding safety are actionable. *See*, *e.g.*, *In re Toyota Motor Corp.*

17  *Hybrid Brake Mktg., Sales, Practices & Products Liab. Litig.*, 890 F.Supp.2d 1210, 1221 (C.D.

18  Cal. 2011) ("[A]dvertisements that make representations about safety are actionable."); *Adler v.*

19  *Royal Cruise Line, Ltd.*, No. C 95-1304 CW, 1996 WL 438799, at *12 (N.D. Cal. Mar. 20, 1996)

20  ("Had the brochure referred in any manner to cleanliness or safety, even a very general statement

21  might constitute an actionable representation.")  Although companies like Uber are "permitted to

22  'puff' their products by stating opinions about the quality" of their products, they cannot "cross

23  the line and make factual representations about important characteristics like a product's safety."

24  *See Osborne v. Subaru of Am., Inc.*, 198 Cal.App.3d 646, 660 n.8 (1988).

25           For example, the California Supreme Court held that a plaintiff was entitled to recover on a

26  false representation claim after the plaintiff was injured while using a golf training device

27  described as "COMPLETELY SAFE BALL WILL NOT HIT PLAYER." *See Hauter v. Zogarts*,

28  14 Cal.3d 104, 109 (1975).  There, the court articulated that factual representations pertaining to

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

safety do not constitute puffery:

> If defendants' assertion of safety is merely a statement of opinion—mere 'puffing'—they cannot be held liable for its falsity. . . . The assertion that the Gizmo is completely safe, that the ball will not hit the player, does not indicate the seller's subjective opinion about the merits of his product but rather factually describes an important characteristic of the product. Courts have consistently held similar promises of safety to be representations of fact.
> [. . . .]
> Moreover, the materiality of defendants' representation can hardly be questioned; anyone learning to play golf naturally searches for a product that enables him to learn safely. . . .

*Id.* at 111-13 (internal citations omitted; internal footnote omitted).[7]

Similarly, in a consumer class action against Toyota, the Central District of California confirmed that statements about safety are not puffery.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F.Supp.2d 1145, 1176 (C.D. Cal. 2010).  In *Toyota*, the plaintiffs alleged that they were duped by Toyota's advertising campaign, which represented, in part, that Toyota "had a commitment to 'overall safety gains'." *Id.* at 1171 (citation omitted).  The court swiftly denied Toyota's arguments about puffery in its motion to dismiss: "[T]he allegations about product safety are more than 'mere puffery' that Toyota's cars were superior to others. They constitute a campaign by Toyota in which it represented itself as prioritizing (even 'obsessing over') safety." *Id.* at 1176-1177.[8]

Defendants ignore these authorities holding that companies expose themselves to false advertising liability when they brag to consumers about something as fundamental as safety.[9]

---

[7] *See also Cont'l Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal.App.3d 388, 424 (1989) ("The alleged false representations in the subject brochures were not statements of 'opinion' or mere 'puffing.' They were, in essence, representations that the DC–10 was a safe aircraft.  In *Hauter*, the Supreme Court held that promises of safety are not statements of opinion—they are 'representations of fact.'") (citations omitted).

[8] In so ruling, the court rejected Toyota's reliance upon a case that Uber cites here. *See Toyota*, *supra*, 754 F.Supp.2d at 1176 (noting that *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir.) *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir. 2003) *does not* "stand[] for the proposition that Defendants who make safety representations cannot be liable for FAL claims").

[9] Uber also fails to mention that a federal district court in Texas recently stated that, if properly

(footnote continued)

1  Instead, Defendants provide a barrage of parenthetical citations to mostly out-of-Circuit cases that,

2  except for *one case*, do not involve a company misrepresenting the *safety* of its products to a

3  customer.[10]  Defendants misplace reliance upon puffery cases in which (1) a boat manufacturer

4  offered a generic statement about its customer service abilities,[11] (2) companies boasted, in

5  general, boilerplate fashion, about the companies' overall product or service,[12] and (3) a

6  manufacturer offered "subjective expressions of opinion" about its televisions' image and color

7  quality.[13]  In addition, Uber, in citing to a slew of securities fraud lawsuits,[14] disregards the fact

8  that consumers deciding whether to get into a complete stranger's car undergo a very different

9  decision-making process than investors choosing what stocks to buy.

10      The one case in Uber's chart that involves statements to a customer about safety is the

11  distinguishable *Hoffman v. A. B. Chance Co.*, 339 F.Supp. 1385 (M.D. Pa. 1972).  In *Hoffman*, an

12  employee was injured when a truck's brake lock device faltered, throwing the employee from the

13  truck.  *Id.* at 1386-1387.  The employee brought a misrepresentation claim premised solely on the

14  —————————————

15  pled (which Plaintiffs here have done), Uber's advertising campaign about safety can trigger
16  Lanham Act liability. *See Greater Houston Transp. Co. v. Uber Technologies, Inc.*, No. CIV.A.
    4:14-0941, 2015 WL 1034254, at *13 (S.D. Tex. Mar. 10, 2015).

17  [10] *See, e.g., Intertape Polymer Corp. v. Inspired Technologies, Inc.*, 725 F.Supp.2d 1333-1334
18  (M.D. Fla. 2010) (masking tape manufacturer sued competitor for misrepresentations regarding
    the quality of masking tape).

19  [11] *Risner v. Regal Marine Indus., Inc.*, 8 F.Supp.3d 959, 992 (S.D. Ohio 2014) ("[T]he customer is
20  Regal's first priority").

21  [12] *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JFHRL, 2009 WL 3320486, at *7 n.5
22  (N.D. Cal. Oct. 13, 2009) (defendant's washing machines were "the 'best' in their class"); *Zapata
    v. Walgreen Co.*, No. CIV.08-5416(RHK/FLN), 2009 WL 3644897, at *3 (D. Minn. Nov. 2, 2009)
23  (Walgreens was "the pharmacy you can trust"); *Brown v. Abbott Labs., Inc.*, No. 10 C 6674, 2011
    WL 4496154, at *4 n.3 (N.D. Ill. Sept. 27, 2011) ("[C]ount on Similac [baby formula
24  manufacturer] for nutrition you can trust").

25  [13] *Hughes v. Panasonic Consumer Electronics Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839,
26  at *12 (D.N.J. July 21, 2011).

27  [14] *In re Cornerstone Propane Partners, L.P.*, 355 F.Supp.2d 1069 (N.D. Cal. 2005); *In re Bayer
    AG Sec. Litig.*, No. 03 CIV.1546 WHP, 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004); *In re Ford
28  Motor Co. Sec. Litig., Class Action*, 381 F.3d 563 (6th Cir. 2004).

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  installer's representation that the brake lock device "offered unprecedented safety." *Id.* at 1387,

2  1388.  The court granted the installer's motion to dismiss, finding that the representation was a

3  "statement of opinion" and was puffery. *Id.* at 1388.

4        Plaintiffs allege much more than just a stray boastful comment by Uber promising

5  "unprecedented safety."  Uber misrepresents specific characteristics of its safety protocol.[15]  This

6  is not puffery.  This is false advertising actionable under both federal and state law.[16]

7        **2.**        **Uber's Advertising Contains More than Mere "Aspirational" Statements**

8        Uber insists that it cannot be held liable for certain statements because "'statements of

9  optimism,' standing alone, 'add nothing' of substance to a company's claims." (ECF No. 16 at 5)

10  (citation omitted.)  Uber emphasizes the wrong advertising language quoted in its brief, ignoring,

11  for example, the parts in which Uber represents that it offers "the strictest safety standards

12  possible" and is the "safest transportation option available." (ECF No. 16 at 6.)  These are not

---

[15] In insisting that its advertising campaign is harmless puffery, Uber fails to explain why then it has downgraded representations on its website about safety.  (*See* ECF No. 1 at ¶¶ 56-61.)  In fact, even after Plaintiffs filed their Complaint, Uber watered down certain advertising language that the Complaint specifically targeted.  For example, whereas before the Complaint was filed, Uber's website boasted in all capital letters, "SAFEST RIDES ON THE ROAD," (*see* ECF No. 1 at ¶ 42, and ECF No. 1-1 at ¶ 14), that language was reduced to the more innocuous-sounding, "SAFETY BY DESIGN." (*See* ECF No. 16-3 at 1/3.)  The fact that Uber retracts statements about safety demonstrates that it knows that these statements were false and misleading to consumers.  (*See* ECF No. 1 at ¶ 61 n.1.)

[16] Numerous other courts are in accord that misrepresentations pertaining to safety are actionable.  *See*, *e.g.*, *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F.Supp.2d 1209, 1244 (D.N.M. 2010) ("The Court finds that the bulk of these statements—***"safer,"*** "more efficiently," "easier," "quicker"—are objectively verifiable and that a reasonable consumer might believe that the seller had actually engaged in some sort of testing before making these statements. They are therefore not puffing.") (emphasis added); *Giles v. Inflatable Store, Inc.*, No. 07-CV-00401-PAB-KLM, 2009 WL 961469, at *4 (D. Colo. Apr. 6, 2009) ("A reasonable jury could determine that the word 'safest' has a specific, quantifiable meaning: the sumo equipment is the most likely (among all competing products) to keep participants from harm."); *Star Child II, LLC v. Lanmar Aviation, Inc.*, No. 3:11-CV-01842 AWT, 2013 WL 1103915, at *4 (D. Conn. Mar. 16, 2013) (finding defendant's representation that it had "implemented the most stringent safety standards" to be "outside the ken of mere puffery").

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1    "aspirational" statements.  These are Uber's promises to consumers that they can safely get into a

2    car driven by a stranger.[17]

3         Uber's argument fails for yet another reason.  Although Uber contends that the statements

4    are subjective puffery, it has explicitly stated in its motion *on several occasions* that each of the

5    challenged statements in this lawsuit are true. (*See, e.g.*, ECF No. 16 at 3 ("The Alleged

6    Statements Are Not Actionable Because (In Addition To Being True) . . . .").)  Although Plaintiffs

7    vigorously dispute the truth of Uber's advertising, Uber's characterization of the statements still is

8    significant, given that statements capable of being proven true *do not* constitute puffery as a matter

9    of law. *Anunziato v. eMachines, Inc.*, 402 F.Supp.2d 1133, 1140-1141 (C.D. Cal. 2005) ("[T]his

10   statement is a specific factual assertion which could be established or disproved through

11   discovery, and hence is not mere puffery.")[18]

12        Uber cannot have it both ways.  If Uber believes the advertising is true, then the case

13   should proceed on the merits, with Plaintiffs being afforded the opportunity to conduct discovery

14   and establish that Uber's advertising is not true.

15        **3.    Plaintiffs Do Not Take Uber's Advertising "Out Of Context"**

16        Uber claims that its misrepresentations cannot trigger false advertising liability because

17   Uber offers "detailed accompanying language . . . describing the facts on which Uber based its

18   opinion." (ECF No. 16 at 7) (emphasis added.)  This additional detail, however, only bolsters the

19   plausibility of Plaintiffs' claim that consumers are being deceived.  As Uber notes, if consumers

20   are interested in learning what Uber means when it references "industry-leading" background

21

22   ───────────────

22   [17] As such, the facts of this case are materially different from those in the securities fraud case,

23   *Retail Wholesale & Dep't Store Union Local 338Retirement Fund v. Hewlett-Packard Co.*, 52

24   F.Supp.3d 961 (N.D. Cal. 2014), wherein this Court found statements in the preamble to a
     corporation's code of ethics to be inactionable puffery. *Id.* at 970 n.2.

25   [18] The Court should also reject Uber's argument that the statements are puffery because they are
     purportedly not "measurable." (*See* ECF No. 16 at 1.)  Uber itself does not even believe this, as

26   illustrated by one of the news articles that Uber attached to its motion.  There, Uber specifically

27   sought to measure the success of its background checking program, boasting about how "it had
     flagged 15% of driver applicants so far this year." (ECF No. 16-7 at 3/8.)

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1    checks, then they may "read the rest of the website." (ECF No. 16 at 7.)  When consumers do this,

2    they are informed that Uber's background checks screen drivers against criminal records "going

3    back 7 years" and that Uber applies a "comprehensive and new industry standard" in the form of

4    "county, federal and multi-state checks." (ECF No. 16-5.)

5          Based on Uber's advertising, it is therefore certainly plausible that a consumer would

6    believe that an "industry-leading" background check is one that (1) screens criminal records going

7    back seven years, and (2) conducts county, federal, and multi-state checks.  This, however, is *not*

8    an "industry-leading" background check.  Unlike the background checks for UberX drivers, the

9    background checks for Plaintiffs' taxi cab drivers "analyze[] the information in Department of

10   Justice and FBI systems that have no time-based or jurisdictional limitations." (ECF No. 1 at ¶

11   70.)  Even Uber's own background check partner—the entity that carries out the purported

12   "comprehensive and new industry standard"—concedes that fingerprinting-based background

13   checks (like Live Scan) are superior: "Fingerprinting helps uncover criminal history not

14   discovered through traditional methods, offers extra protection to aid in *meeting industry*

15   *guidelines*, and helps prevent fraud." (ECF No. 1 at ¶ 76) (emphasis added.)

16         In short, unlike the cases upon which Uber relies—in which the context of the deceptive

17   statements rendered them inactionable—here, the opposite is true.  Uber, by providing information

18   purportedly supporting its misrepresentations regarding safety standards, lends even more

19   credibility to those misstatements.

20       **4.      Uber's Misrepresentations Regarding the Safety Of UberX Rides Qualify as
                  Commercial Speech**

21

22            (a)      Uber's Statements to the Media Qualify as Commercial Speech

23         Speech can be characterized as "commercial" when (1) the speech is advertising, (2) the

24   speech references a specific product or service, and (3) the speaker has an economic motive for

25   engaging in the speech. *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (*citing*

26   *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983)).[19]  Uber contends that certain

27   _____

28   [19]Although these three factors are elements of commercial speech, it is not necessary that they
     (footnote continued)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  of its promotional statements touting the safety of UberX lose their "commercial" nature simply

2  because they appear in news articles.  (*See* ECF No. 16 at 9.)

3      This argument lacks merit.  "Commercial speech does not retain its commercial character

4  'when it is inextricably intertwined with otherwise fully protected speech.'"  *Hunt*, *supra*, 638 F.3d

5  at 715 (citation omitted).  However, this test "operates as a *narrow exception* to the general

6  principle that speech meeting the *Bolger* factors will be treated as commercial speech."  *Dex Media*

7  *West, Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012) (emphasis added).  As such,

8  "'advertising which 'links a product to a current public debate' is not thereby entitled to the

9  constitutional protection afforded noncommercial speech.'"  *Kasky*, *supra*, 27 Cal.4th at 957

10  (*quoting Bolger*, *supra*, 463 U.S. at 67-88, and finding that Nike's statements in letters to

11  newspapers written in response to negative publicity regarding sweat shop factory conditions

12  constituted commercial speech).  Put differently, parties cannot use news publications "to piggy-

13  back [] fraudulent commercial speech into full First Amendment protection." *See United States v.*

14  *Schiff*, 379 F.3d 621, 629 (9th Cir. 2004).

15      In *SKEDKO, Inc. v. ARC Products, LLC*, No. 3:13-CV-00696-HA, 2014 WL 2465577 (D.

16  Or. June 2, 2014), Skedco and ARC Products were competitors in the field of emergency rescue

17  equipment.  *Id.* at *1.  ARC Products filed a Lanham Act counterclaim against Skedco alleging

18  that Skedco's executive had misrepresented in a published interview titled "Cleared for Takeoff"

19  that an injured person could be ready for transport in a "Sked sled" in only 20 seconds.  *Id.* at *5.

20  Filing a motion to dismiss, Skedco raised the same "commercial speech" argument offered here by

21  Uber.  *Id.* Applying Ninth Circuit authorities, the court rejected this argument:

22      [Skedco's] argument that [its executive's] statements are not actionable are all
       based on the fact that a journalist's article is clearly not commercial speech but
23      rather speech that is protected under the First Amendment. While the author of
       "Cleared for Takeoff" may have intended to inform the public about various
24      advances in aerial transport medicine, defendant did not bring a claim against the
       author. Rather, defendant takes issue only with the statements of [the executive],
25      as quoted in the article. [The executive's] statements to the author of the article

26  ──────────────────────

27  each be present in order for speech to be characterized as "commercial" in nature. *Bolger*, *supra*,
   463 U.S. at 68 n. 14.

28

863866.1

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

highlight the newest features of the Sked sled and explain the added benefits that those new features provide to Skedco customers. . . . *[T]he magazine's readership is targeted toward plaintiff's primary customer. The court cannot find a purpose behind [the executive's] statements other than to promote his company's product to potential customers. Therefore, the court finds that [the executive's] statements constitute commercial speech.*

*Id.* at *6 (emphasis added) (internal citation omitted).

Refusing to recognize these authorities, Uber hangs its hat on the distinguishable, *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F.Supp.2d 821 (C.D. Cal. 2010). That summary judgment ruling is inapplicable though, as, in *TYR Sport*, the court stated that the spokesperson for Speedo made the operative statement "*in response to* [the reporter's] apparently unsolicited questions." *Id.* at 829 (emphasis added). In addition, the court there noted that the statements were, in fact, "inextricably related to the subject of [the] article," recognizing that they were not simply promotions for Speedo swimwear. *See id.* (distinguishing a case in which an article featured "gratuitous promotions of [a] manufacturer's product").

The Uber statements appearing in the news articles are markedly different. In the first article, the Uber spokesperson, unlike the spokesperson in *TYR Sport*, skirted the "subject of [the] article" – the discovery of UberX drivers with checkered criminal histories. (*See* ECF No. 16-6 at 1/5-2/5.) Instead, Uber provided a canned statement, which reasserted many of the same promotional statements that appear on its website. (*See* ECF 16-6 at 2/5-3/5.)[20]

Uber took the same approach in the second article. In that article, the author recounted how Uber had hired (1) a California woman who was reportedly "on probation for almost beating a woman to death in 2012," and (2) a Chicago driver who was convicted in 2012 of driving under the influence, and who, since beginning his career with Uber, has been accused of sexually assaulting one of his Uber passengers. (ECF No. 16-7 at 2/8-3/8.) Rather than explaining what happened in these two instances, Uber took a different route: "Uber declined to comment

---

[20] The fact that Uber's statement included a pitch for consumers to view its website further demonstrates that the purpose of the statement was to generate business, not to provide a meaningful contribution to the article. (*See* ECF No. 16-6 at 3/5.)

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   specifically on these two cases." (ECF No. 16-7 at 3/8.) Instead, Uber provided a scripted e-mail

2   statement which, again, contained statements trumpeting its safety measures. (ECF No. 16-7 at

3   3/8.)

4        In the third article, Uber was asked how a woman with "a 20-year rap sheet" was hired as

5   an UberX driver. (ECF No. 16-8 at 3/7-4/7.) As reflected in the article, Uber did not provide a

6   meaningful explanation. (ECF No. 16-8 at 4/7.) Instead, Uber *again* chose to promote the safety

7   of its rides, this time disparaging the taxi industry in the process: "We're confident that every ride

8   on the Uber platform is safer than a taxi." (ECF No. 16-8 at 4/7.) Considering that the safety of

9   *taxi rides* was certainly not at issue in the article, this statement is not "inextricably intertwined"

10  with the subject of the article.

11       The statements in the news articles therefore qualify as commercial speech. At best, these

12  articles, and the debate about their meaning, create triable issues of fact which cannot be decided

13  at this stage.

14            (b)    The Misrepresentations Hyperlinked in the Receipts Explaining the "Safe
                     Rides Fee" Are Actionable Statements

15

16       Uber contends that the purported justification for the "Safe Rides Fee" cannot qualify as

17  commercial speech because consumers receive this explanation after they complete their UberX

18  rides. (ECF No. 16 at 10.) Uber, again, is off base. Uber, which allegedly provided *41 million*

19  *trips* in 2013 (when it was not as popular as it is today), thrives on passengers continuously and

20  repeatedly ordering UberX rides. (*See* ECF No. 1 at ¶ 54.)

21       Accordingly, it is plausible that passengers who use UberX, and read Uber's justification

22  for the one dollar fee, are influenced into using UberX *in the future*.[21] The Complaint specifically

23  pleads as much: "[C]onsidering that Uber explicitly specifies that this is an *additional* safety fee, it

24  is reasonable for consumers to expect that they **will be** receiving a ride safer than that provided by

25  ───────────────────

26  [21] This stands in contrast to the facts of *Gonzalez v. Allstate Insurance Co.,* No. CV 04-
    1548FMCPJWX, 2005 WL 5891935 (C.D. Cal. Aug. 2, 2005), where the insurance documents

27  provided to the policyholders were not issued in order to provoke future action by the
    policyholders. *Id.* at *8.

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1    Plaintiffs' taxi cabs . . . ." (ECF No. 1 at ¶ 52) (bolding and underlining emphasis added.)

2    **C.      PLAINTIFFS CAN PURSUE RELIEF UNDER THE CALIFORNIA STATUTES**

3              **1.      Plaintiffs Have Standing Under the California Unfair Competition Law**

4              Uber first posits that Plaintiffs lack standing under the "fraudulent" prong of the UCL

5    because Plaintiffs "do not allege that they relied on Uber's allegedly false or misleading

6    advertising." (ECF No. 16 at 11.)  This argument never gets off the ground.  Plaintiffs are

7    competitors of Uber, *not* Uber's customers.  Accordingly, Plaintiffs state a claim under the

8    "fraudulent" prong by alleging that Uber's misrepresentations have deceived potential passengers.

9    *See*, *e.g.*, *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, No. 2:09CV02067-MCE-GGH, 2010

10   WL 1611398, at *2 (E.D. Cal. Apr. 20, 2010) ("Plaintiff has been injured by consumer reliance

11   upon Defendant's misrepresentations which have resulted in competitive harm and diverted

12   sales."); *Epicor Software Corp.*, *supra*, 2013 WL 2382262 at *5 (finding that allegations about

13   consumer deception "suffice" for claim under "fraudulent" prong).  No California court has ever

14   held that "competitor plaintiffs must plead *their own* reliance." *Heartland Payment Sys., Inc. v.*

15   *Mercury Payment Sys., LLC*, No. C 14-0437 CW, 2015 WL 3377662, at *7 (N.D. Cal. Feb. 24,

16   2015) (emphasis added).[22]

17             Uber's arguments under the "unlawful" and "unfair" prongs fare no better.  Uber simply

18   repeats the same "reliance" argument, and cites cases[23] that address Proposition 64's effect on

19

---

20   [22] The *Heartland Payment Systems* court observed that federal courts sitting in California have

21   disagreed with one another on the issue, acknowledging one of the cases upon which Uber relies –
     *O'Connor v. Uber Technologies, Inc.*, 58 F.Supp.3d 989 (N.D. Cal. 2014). *See* 2015 WL 3377662

22   at *7. Uber's other cases, however, do not support its cause. *In re Tobacco II Cases*, 46 Cal.4th
     298 (2009) addressed *consumer* standing under the UCL. *Id.* at 328.  And, *ZL Technologies, Inc. v.*

23   *Gartner, Inc.*, No. CV 09-02393 JF (RS), 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009) resulted

24   from the plaintiff there "fail[ing] to cite any case law holding that a plaintiff that itself did not
     actually rely upon the alleged misrepresentations is entitled to relief." *Id.* at *11. Unlike in *ZL*

25   *Technologies*, Plaintiffs here have cited such authority.  The Court should disregard Uber's

26   authorities.

     [23] In *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011), consumers sued a corporation,

27   alleging that it falsely advertised locksets as "Made in U.S.A." *Id.* at 319.  Similarly, in *In re*
     *Facebook PPC Advertising Litigation*, No. 5:09-CV-03043-JF, 2010 WL 3341062 (N.D. Cal.

28   (footnote continued)

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1   consumer standing under the UCL. (*See* ECF No. 16 at 12.)  Again, Plaintiffs are Uber's

2   competitors, not its customers.  Accordingly, the analysis in these cases pertaining to standing has

3   no bearing on this case. *See VP Racing Fuels*, *supra*, 2010 WL 1611398 at *3 n.3 ("In this case,

4   however, Plaintiff is a corporation bringing the UCL cause of action as a competitor, and

5   consequently, is not the type of plaintiff whose standing was targeted by California voters through

6   Proposition 64.").

7         Further, Uber ignores the many cases holding that competitor plaintiffs can bring UCL

8   claims premised on false advertising under both the "unlawful" and "unfair" prongs.  Courts have

9   routinely found that well-pled Lanham Act and FAL claims trigger the "unlawful" prong of the

10  UCL. *See, e.g.*, *Heartland Payment Sys.*, *supra*, 2015 WL 3377662 at *6.  And courts allow

11  competitor plaintiffs to pursue claims premised on misrepresentations under the "unfair" prong.

12  *See, e.g.*, *id.*; *Luxul Tech. Inc. v. Nectarlux, LLC*, No. 14-CV-03656-LHK, 2015 WL 352048, at *9

13  (N.D. Cal. Jan. 26, 2015).  This case should be no different.

14        Uber's effort to gin up controversy should be disregarded.  Plaintiffs have standing under

15  the UCL.

16        **2.        Uber's Attempt to Strike Plaintiffs' Request for Restitution Under the**
             **California Statutes Is Premature**
17

18        Restitution under the UCL is limited to "(1) 'money or property that defendants took

19  directly from [a] plaintiff' or (2) 'money or property in which [a plaintiff] has a vested interest.'"

20  *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, No. C 12-05523 WHA, 2013 WL

21  1007666, at *7 (N.D. Cal. Mar. 13, 2013) (*quoting Korea Supply Co. v. Lockheed Martin Corp.*,

22  29 Cal.4th 1134, 1149 (2003)).[24]  As Uber accurately points out, Plaintiffs—who did not suffer

23  harm from direct dealings with Uber—do not seek money via the first of these two routes.  Uber

_____

25  Aug. 25, 2010), advertising *customers* of Facebook sued the social networking company, alleging
    that it had misrepresented to the advertising customers that it would charge for only certain types
26  of "clicks" on the customers' advertisements.  *Id.* at *9.

27  [24] Restitution under the FAL is limited the same way. *See In re Vioxx Class Cases*, 180
    Cal.App.4th 116, 131 n.15 (2009).

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   fails, however, to meet its burden of establishing as a matter of law why Plaintiffs' restitution

2   claim cannot proceed under the second route.

3          All Uber can muster is the contention that "Plaintiffs cannot claim that they have a

4   property right in the revenue that Uber has earned by attracting customers to its services." (ECF

5   No. 16 at 13.)  However, Uber ignores the reality that—given that this case is in its nascency, and

6   there has not yet been any discovery—Plaintiffs have no way of alleging details regarding the

7   "revenue that Uber has earned" by way of its false advertising campaign.

8          As such, it is simply "too early in these proceedings to determine definitively whether

9   [Plaintiffs] might be entitled to restitution and disgorgement based upon [their] UCL-related

10  allegations." *MGA Entm't, Inc. v. Mattel, Inc.*, No. CV05-2727NM(RNBX), 2005 WL 5894689, at

11  *9 (C.D. Cal. Aug. 26, 2005) (footnote omitted).  At this early point in the case, Uber has not

12  proven as a matter of law that Plaintiffs did not have confirmed, unconditional business from

13  particular customers that was usurped by Uber.[25] *See Luxpro Corp. v. Apple Inc.*, No. C 10-03058

14  JSW, 2011 WL 3566616, at *8 (N.D. Cal. Aug. 12, 2011) (holding that a MP3 manufacturer could

15  pursue a restitution claim against competitor due to competitor's disparaging of the manufacturer's

16  products to certain distributors because "at this stage of the proceedings, the Court cannot say as a

17  matter of law that [the manufacturer's] interest in profits from those eleven [distributors] was

18  contingent or conditional.").

19                          **V.  <u>CONCLUSION</u>**

20         Consumers naturally have misgivings about getting into cars driven by strangers.  To

21  alleviate these concerns, Uber instituted an advertising campaign through which it misrepresents

22  that it imposes the "strictest safety standards possible," including "industry-leading" background

23

24

25  _____

26  [25] A loss of this type of business is certainly plausible (and could be proven in discovery), given
    that Plaintiffs and Uber compete for the same passengers, including even after a passenger signs
27  up for the UberX service. (*See* ECF No. 1 at ¶ 4.)

28

PEARSON, SIMON & WARSHAW, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1   checks for its drivers.  Because the Complaint states a plausible claim that Plaintiffs have been

2   harmed by this false and misleading advertising, Uber's motion to dismiss should be denied.[26]

3   DATED: June 11, 2015

4                                          /s/ Benjamin E. Shiftan
                                           BRUCE L. SIMON (Bar No. 96241)
5                                             bsimon@pswlaw.com
                                           BENJAMIN E. SHIFTAN (Bar No. 265767)
6                                             bshiftan@pswlaw.com
                                           **PEARSON, SIMON & WARSHAW, LLP**
7                                          44 Montgomery Street, Suite 2450
                                           San Francisco, California 94104
8                                          Telephone: (415) 433-9000
                                           Facsimile: (415) 433-9008

9                                          CHRISTOPHER B. DOLAN (Bar No. 165358)
                                             chris@cbdlaw.com
10                                         **THE DOLAN LAW FIRM**
                                           1438 Market Street
11                                         San Francisco, California 94102
                                           Telephone: (415) 421-2800
12                                         Facsimile: (415) 421-2830

13                                         Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25
    _____

26  [26] If the Court grants Uber's motion, either in full or in part, Plaintiffs request leave to file an
27  amended complaint to address the Court's concerns. *See* Fed. R. Civ. Proc. 15(a)(2) ("The court
    should freely give leave when justice so requires.").
28