***CAZZELL & ASSOCIATES, ATTORNEYS***
***MARYANN CAZZELL, ESQ.*** (Bar #128780)
406 W. Fourth Sreet
Santa Ana, CA 92701
Telephone: 714/558-1772
Facsimile: 714/558-1883
*cazzell@msn.com*

*Attorneys for [Proposed] Plaintiff-in-Intervention*
 *A WHITE AND YELLOW CAB, INC.*

### *UNITED STATES DISTRICT COURT*

### *NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DISTRICT*

| | |
|---|---|
| L.A Taxi Cooperative, Inc. dba Yellow Cab Co.; et al., | ) ) | CASE NO.: 3-15-cv-01257-JST |
| | ) | NOTICE OF MOTION FOR ORDER GRANTING LEAVE TO FILE A WHITE AND YELLOW CAB, INC.'s COMPLAINT-IN-INTERVENTION FOR DAMAGES AND INJUNCTIVE RELIEF (*F.R.C.P.* 24(a) and -(b)); DEMAND FOR JURY TRIAL (PROPOSED COMPLAINT-IN-INTERVENTION ATTACHED) [FILED CONCURRENTLY WITH DECLARATION OF MARYANN CAZZELL AND [PROPOSED] ORDER] |
| *Plaintiffs,* | ) ) ) ) ) ) |
| vs. | ) ) ) ) |
| Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC. | ) ) ) ) ) |
| *Defendants.* | ) ) ) ) ) ) ) | HEARING DATE: 7/30/2015 TIME: 2:00 p.m. JUDGE: The Hon. JON S. TIGAR LOCATION: SAN FRANCISCO COURTHOUSE, COURTROOM 9, 19TH Fl., 450 Golden Gate Ave., San Francisco, CA 94102 |
| | ) ) ) | CASE MGMT. CONF.: 7/22/2015 |
| | ) ) ) | COMPLAINT FIL. DATE: 3/18/2015 |
| _____ | ) ) ) | TRIAL DATE: NONE |

///

///

A WHITE & YELLOW CAB v. UBER TECHNOLOGIES   ***1***   MOTION TO FILE COMPLAINT-IN-INTERVENTION

*NOTICE OF MOTION AND MOTION*

TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR COUNSEL:

      *NOTICE:*  PLEASE TAKE NOTICE that on July 30, 2015 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9 on the 19th floor of Northern District U.S. District Court, 450 Golden Gate Ave., San Francisco, CA 94012, Moving Party [Proposed] Complainant-in-Intervention A White and Yellow Cab, Inc., a California corporation, also doing business as "A TAXI CAB" and "1-800-4-MY-TAXI" ("A TAXI") will present the following Motion to this Honorable Court:

      *GROUNDS:*  At said time and date, A TAXI will seek an Order allowing it to intervene in this action pursuant to *F.R.C.P.* 24(a) or -(b) on the grounds that A TAXI may intervene as of right because it has an unconditional right to do so since it claims an interest relating to the property and transactions that are the subject of the action, is so situated that disposing of the action may as a practical matter impair or impede its ability to protect its interest, and that the existing plaintiffs do not adequately represent that interest; or alternatively that A TAXI's claim as stated in the [Proposed] Complaint-in-Intervention shares with the main action a common question of law or fact.  This Motion is based upon this Notice of Motion and on the attached Memorandum of Points and Authorities and the [Proposed] Complaint-in-Intervention, on the Complaint previously filed in this action and any First Amended Complaint to be filed in this action prior to the hearing, on the provisions of *F.R.C.P.* 24(a) and -(b), on such matters of which this Honorable Court may be invited to take Judicial Notice prior to the hearing, on all of the other pleadings, papers, and records on file herein, and on such oral argument as may be presented at the hearing.

DATED: June 18, 2015
                               *RESPECTFULLY SUBMITTED,*
                               *CAZZELL & ASSOCIATES, ATTORNEYS*

                               /S/ Maryann Cazzell, Esq.

                       By: _____
                             MARYANN CAZZELL, ESQ.
                             ATTORNEYS FOR [PROPOSED]
                             COMPLAINANT-IN-INTERVENTION
                             A WHITE AND YELLOW CAB, INC.

## A.  INTRODUCTION AND SUCCINCT STATEMENT OF FACTS:

A TAXI is an Orange County, California-based taxi company that has been operating for 29 years in compliance with a complex web of taxicab rules and regulations which were promulgated by the State, and ceded to the municipal authorities pursuant to the state directive of *Cal. Gov't Code* section 53075.5 ((Proposed) Complaint-in-Intervention, paragraphs 1 and 3[1]).  Not only is A TAXI fully licensed to pick up taxi fares everywhere in Orange County, but it also holds a vested rights under a non-exclusive franchise in Anaheim to be one of only three taxi companies to pick up fares there (paragraph 24).

Beginning as early as 2011 Defendants Uber Technologies, Inc., a Delaware corporation, Rasier, LLC, a Delaware limited liability company, and Rasier-CA, LLC, a Delaware limited liability company (hereinafter collectively "UBER,") roughly speaking, through the development of smart phone "apps," began enabling individuals to use, and orchestrating the use of, their private automobiles to effectively operate an unlicensed and unauthorized taxi "fleet."  In so doing, UBER taxi business, intentionally diverting the taxicab fare profits which A TAXI, the plaintiff cab companies named in the lead complaint, and the other legitimate California-licensed taxi companies would have received, to UBER (paragraphs 37, 38, and 53.)

The Complaint-in-Intervention seeks in relevant part an award of damages from, and the issuance of injunctive relief against, UBER, based upon the direct harm that its unfair business practices, unfair trade practices, and false advertising acts caused and continue to cause A TAXI (paragraphs 1-10 of the PRAYER.)

By its Complaint-in-Intervention similarly-situated plaintiff A TAXI seeks relief very much like that sought in the lead Complaint by nineteen other California-based legitimate taxi companies (one of which - CABCO, INC. - is also based in Orange County.) The Complaint-in-Intervention contains a more expansive set of allegations about unfair

---

[1]  All further references to paragraphs contained in this Brief are references to paragraphs of the [Proposed] Complaint-in-Intervention.

competition, stating claims against the California Public Utilities Commission ("CPUC") that assist and clarify in stating claims upon which relief can be based, and do not prevent intervention.

*B. STATEMENT OF ISSUES TO BE DECIDED:*

    *1) WHETHER A TAXI IS ENTITLED TO INTERVENTION OF RIGHT UNDER F.R.C.P. 24(a);* or alternatively,

    *2) WHETHER A TAXI IS ENTITLED TO PERMISSIVE INTERVENTION UNDER F.R.C.P. 24(b).*

*C. ARGUMENT:*

    (1) A TAXI IS ENTITLED TO INTERVENTION OF RIGHT.

    *F.R.C.P.* 24(a)(2) allows a party to intervene as of right where it "claims an interest relating to the property or transactions that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[2]

    When analyzing a motion to intervene of right under Rule 24(a)(2), we apply a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*The Wilderness Society v. U.S. Forest Service*, 630 Fed.3d 1173, 1179 (9th Cir. 2011) (citing from *Sierra Club v. EPA,* 995 Fed.2d 1478, 1484 (9th Cir. 1993), which in turn cited

---

[2]  The timeliness requirement is addressed in more detail in the Section (2) (*infra*), the discussion of which is incorporated herein by this reference.

from *Scotts Valley Band of Pomo Indians v, United States*, 921 Fed.2d 924, 926 (9th Cir. 1990).)

In allowing intervention of right even in a National Environmental Policy Act ("NEPA") action (which historically have applied a categorical prohibition on intervention as of right at the liability stage of the case,) the *Wilderness Society* Court stated that in NEPA actions, as in all cases, the "operative inquiry" for the "putative intervenor" should be "whether 'the interest is protectable under some law' and whether 'there is a relationship between the legally protected interest and the claims at issue'" (citing to *Sierra Club*, *Id.*)

In this case A TAXI certainly claims an interest in the subject matter of the lead case - *California taxi companies vs. the Entities that would put them out of business*. The interest is "significantly protectable" because it comprises the entirety of A TAXI's business - its vested (paragraph 51) property rights in its ability to operate as a taxi company.

In this situation, the analysis of the *Sierra Club* and *The Wilderness Society* criteria listed under parts (3) and (4) above go hand-in hand: A TAXI's situation *vis-a-vis* the lead Complaint is such that its interests may be impaired or impeded if it is denied intervention, yet A TAXI's interests are not being adequately represented by the existing plaintiffs.

A TAXI is a California taxi company just like each of the 19 plaintiffs in the lead case, but its interests are not adequately represented by those plaintiffs. Should the lawsuit proceed to an unfavorable disposition *without* A TAXI's participation, that holding will very likely constitute binding precedent *against* A TAXI's claims against UBER. Quite simply, A TAXI will lose its "day in Court." A TAXI's interests are not adequately represented by the Plaintiffs in the lead Complaint, because (at least at this stage) that pleading does not allege facts clearly explaining why UBER's acts effect unfair competition for A TAXI, which is bound by egregious Orange County taxi operating rules. Further, the lead Complaint does not address the behind-the-scenes enactment (the CPUC

1  TNC Classification) that enabled UBER to operate "*de facto*" taxicabs, and which has

2  made it so difficult for California taxi companies to state viable claims against UBER in

3  Court - since UBER is operating under "color of (CPUC) law."[3]  At the end of the day it

4  may prove necessary for other plaintiffs to also challenge the CPUC TNC Classification in

5  order to pierce the aegis of UBER's TNC "license" that allows it to operate what are

6  effectively taxicabs, without complying with any of the taxicab regulations.

7         The allegations of the lead Complaint further fail to adequately represent A

8  TAXI because they do not explain that authentic taxicabs must be governed by *local*

9  *authorities* pursuant to the authority ceded to them by the State under *Cal Gov't Code*

10  section 53075.5 - and not by the CPUC (paragraphs 25, 26, 27, and 36.)  And while the lead

11  Complaint focuses on safety issues in the context of unfair advertising, it misses an

12  important one - UBER's failure to make any provisions for picking up the ten percent of

13  taxi passengers who require "demand responsive service" that need assistance under the

14  Americans with Disabilities Act ("ADA") (paragraph 93(c).)

15         A prospective intervenor "has a sufficient interest for intervention purposes

16  if it will suffer a practical impairment of its interests as a result of the pending litigation."

17  *California ex rel. Lockyer v. United States*, 450 Fed.3d 436, 441 (9th Cir. 2006).  That is the

18  situation here.  If A TAXI is not allowed to intervene, the case will proceed and as noted

19  above the holding will likely be binding upon A TAXI because its position, legally and

20  factually, is so similarly-situated to the 19 plaintiffs in the lead case, especially CABCO.

21  Yet these plaintiffs are not adequately representing A TAXI's interests, because at least for

22  now, they have failed to challenge the constitutionality of the "enabling statute" for

23  UBER's California operations - the TNC Classification.  A TAXI believes that the claims

24  against UBER and the CPUC as stated in its [Proposed] Complaint are integrally related -

25  as demonstrated by the detailed exposition of facts that relate to both sets of Defendants-in-

26

27         [3] As noted in the [Proposed] Complaint-in-Intervention, UBER's operations have been
banned in many U.S. Cities and in several Countries all over the world (paragraph 48.)  Here in
28  California UBER has built-in protection in the form of the CPUC TNC Classification, which A
TAXI maintains is unconstitutional and should be declared void.

Intervention as alleged in that pleading. It only makes sense to adjudicate these issues

together - and all of them together with the claims of the 19 plaintiffs in the lead case.

In evaluating requests to intervene as of right, the Ninth Circuit "normally

follow 'practical and equitable considerations' and construe the Rule 'broadly in favor of

proposed intervenors'." *The Wilderness Society, supra at p. 801 (citing to United States v.*

*City of Los Angeles*, 288 Fed.3d at 397-98 (9th Cir. 2002) (internal quotation marks omitted)

(other citations omitted).) A TAXI should be allowed intervention as of right because it

meets the statutory and case criteria. Further as expressed below an Order allowing

intervention will serve the interests of judicial economy and promote an efficient resolution

of the issues involved in the Taxi v. UBER claims.


*2)* A TAXI IS ENTITLED TO PERMISSIVE INTERVENTION.

*F.R.C.P.* 24(b)(1)(B) allows permissive intervention where the movant "has

a claim or defense that shares with the main action a common question of law or fact."

This one is easy. A TAXI shares many claims against UBER with the

plaintiffs in the lead case. In addition to the Claims that share the exact same name in the

two Complaints - Violation of the *Lanham Act*, the Unfair Competition statutes, and

Violation of *False Advertising Law* - there is A TAXI's pendent state law claim under the

*Unfair Practices Act* - which shares most of the same questions of law or fact as do the

three named claims. At the end of the day both complaints are brought by California

taxicab companies seeking relief against UBER for UBER's acts in misleading the

traveling public, false advertising, and unfair competition, all of which had the effect of

stealing plaintiffs' legitimate taxi business, income, and profits, harming plaintiffs'

reputation, and destroying or threatening to destroy competition.

Moreover, A TAXI meets the additional requirement of *F.R.C.P.* 24(b) that

the Court in its discretion can find that the intervention will not unduly delay or prejudice

the adjudication of the original parties' rights. These factors are addressed under subparts

(a), (b), and (c) immediately below.

(a) *A TAXI's Motion is "timely" under Rule 24(b)(1) and Counsel acted Diligently in Presenting this Motion.*

As noted in more detail in the accompanying DECLARATION OF MARYANN CAZZELL, the text of which is incorporated herein, this Motion was filed as promptly as was realistically possible once A TAXI learned of the case's existence.

The lead complaint was filed on March 18, 2015, exactly three months ago. According to the Case Docket, one of the very first things that the existing parties did was to stipulate to enlarge the time within which Defendants could respond to the Complaint, and if the responsive pleading was a Motion, to correspondingly extend and then also to enlarge the time within which the Plaintiffs in the lead case could respond to the same (**Docket # 7.**) While those mutual extensions were executory, the case, which had originally been assigned to the Hon. Maria Elena James, Magistrate Judge, was transferred to the Hon. Judge Tigar on or after May 12, 2015 pursuant to a RELATED CASE ORDER (**Docket # 14.**) Because of the Reassignment, the previously-assigned Case Management Conference and related dates were vacated, and new ones set.

Shortly after this time counsel for AWYC contacted counsel for the plaintiffs in the lead case, advised that AWYC would be seeking to intervene, and asked whether counsel would be willing to stipulate to the same, shortly thereafter forwarding a copy of the proposed pleading. Counsel for plaintiffs then waited a full nine days before responding that they were unwilling to so stipulate. Having received this response, AWYC's counsel then had to prepare the within Motion and [Proposed] Order, the Declaration, the Certificate of Interested Entities and the Notice of Appearance, and to ready all of these documents for submission. This was accomplished in less than a week. Meanwhile, there have been no dispositive rulings in the matter; discovery has not even been initiated. Nothing will have "changed"drastically between now and then. AWYC acted diligently and promptly in bringing the Motion, and intervention should be allowed.

///

///

1         (b) *Further, no unreasonable delay will result from an Order allowing*

2    *Intervention.* At page 17, lines 5 and 6 of "PLAINTIFF'S OPPOSITION TO

3    DEFENDANTS' MOTION TO DISMISS" filed literally one week ago on June 11th: the

4    Plaintiff in the lead case represent that "... *this case is in its nascency, and there has not yet*

5    *been any discovery*..." (emphasis added.)  The Rule 12(b)(6) Motion has not yet been heard,

6    nor has this Honorable Court yet conducted the first Case Management Conference.[4]  This

7    case is still "new" *there will be no prejudice* to any of the parties in the lead case by the

8    entry of an Order allowing intervention.

9

10        (c) *This Honorable Court's Exercise of Discretion:*

11        This Honorable Court has broad discretion to grant the within Motion if it

12   finds that this is in the overarching interests of justice, expediency, and access to the courts.

13        Addressing a request for intervention as of right (the rationale for which

14   applies even more to a request for permissive intervention,) the Court in *Nuesse v. Camp*,

15   385 Fed.2d 694, 700 (D.C. Cir. 1967) explained that "the 'interest' test is primarily a

16   practical guide to disposing of lawsuits by involving as many apparently concerned persons

17   as is compatible with efficiency and due process."

18        It is understood that this was the rationale of this Honorable Court when, on

19   May 12, 2015 it deemed the lead Complaint sufficiently related to case #C-14-05615-JST

20   (*Philliben et al. v. UBER, etc.*) that it ordered that the lead Complaint be transferred from

21   Magistrate Judge James' Courtroom, to this one.  Compared to A TAXI's [Proposed]

22   Complaint, *Philliben* is also an action against UBER, but at that point the similarities stop.

23   Philliben was an UBER driver, the named plaintiff in a class action of drivers seeking relief

24   on employment-related claims.  His is not a taxi action.  Still, this Honorable Court found it

25   efficient to deem those cases related so as to address the claims of "apparently concerned

26   persons" seeking relief as against UBER.

27

28       [4]  although it is expected that these hearings will have taken place prior to the time that
     the within Motion can be heard.

1   A TAXI intends to present its claim one way or another.  A TAXI's

2   Complaint should be brought in Federal Court, since it is based on *Lanham Act,* 42 *U.S.C.*

3   section 1983 civil rights claims, and several challenges made under the *U.S. Constitution.*

4   Moreover, both sets of Defendants-in-Intervention are based in San Francisco, so it follows

5   that this case should "land" here.  Under the *Nuesse* (*supra*) rationale, it only makes sense

6   that A TAXI be allowed to intervene in this relatively-new, Taxi Company v UBER lawsuit

7   so that A TAXI's lawsuit can be addressed in a manner that is consistent with efficiency,

8   judicial economy, and due process.

9

10  *CONCLUSION:*

11          Based upon all of the foregoing, it is respectfully requested that this

12  Honorable Court grant the within Motion and deem the concurrently-submitted

13  [PROPOSED] COMPLAINT-IN-INTERVENTION filed, or that this Honorable Court

14  enter such other Order pertaining to the relation of the two cases as it deems appropriate, or

15  enter whatever other Order or grant whatever other relief it should deem just and proper.

16

17  DATED:  June 18, 2015                    *RESPECTFULLY SUBMITTED,*

18                                           *CAZZELL & ASSOCIATES, ATTORNEYS*

19

20                                           /S/ Maryann Cazzell

21

22          By: _____
                MARYANN CAZZELL, ESQ.
                ATTORNEYS FOR [PROPOSED]
23              COMPLAINANT-IN-INTERVENTION
                A WHITE AND YELLOW CAB, INC.

24

25

26

27

28