1 IRELL & MANELLA LLP
Andra Barmash Greene (123931)
2 agreene@irell.com
A. Matthew Ashley (198235)
3 mashley@irell.com
840 Newport Center Drive, Suite 400
4 Newport Beach, California 92660-6324
Telephone: (949) 760-0991
5 Facsimile: (949) 760-5200

6 Attorneys for Defendants

7

8 **UNITED STATES DISTRICT COURT**

9 **NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN FRANCISCO DIVISION**

11 L.A. Taxi Cooperative, Inc. dba Yellow Cab          Case No. 3:15-cv-01257-MEJ
Co.; Administrative Services SD, LLC dba
12 Yellow Radio Service; All Yellow Taxi, Inc.          **DEFENDANTS' REPLY IN SUPPORT OF**
dba Metro Cab; American Cab, LLC;          **MOTION TO DISMISS**
13 American Cab, LLC dba Pomona Valley
Yellow Cab; Bell Cab Company, Inc.; Big Dog
14 City Corporation dba Citywide Dispatch,          Date:  July, 9 2015
Citywide Taxi, and Big Dog Cab; Cabco          Time: 2:00 p.m.
15 Yellow, Inc. dba California Yellow Cab; C&J          Judge: Hon. Jon S. Tigar
Leasing, Inc. dba Royal Taxi; G&S Transit          Place: San Francisco Courthouse
16 Management, Inc.; Gorgee Enterprises, Inc.;                  Courtroom 9, 19th Floor
LA City Cab, LLC; Long Beach Yellow Cab                  450 Golden Gate Ave.
17 Co-operative, Inc.; Network Paratransit                  San Francisco, CA 94102
Systems, Inc.; South Bay Co-operative, Inc.
18 dba United Checker Cab; Taxi Leasing, Inc.
dba Yellow Cab of Ventura County; Tri-City
19 Transportation Systems, Inc.; Tri Counties
Transit Corporation dba Blue Dolphin Cab of
20 Santa Barbara, Yellow Cab of Santa Maria,
and Yellow Cab of San Luis Obispo; and
21 Yellow Cab of South Bay Co-operative, Inc.
dba South Bay Yellow Cab,
22
                    *Plaintiffs*,
23
            vs.
24
Uber Technologies, Inc.; Rasier, LLC; and
25 Rasier-CA, LLC,
26
                    *Defendants*.
27
28

3442168                                    DEFS' REPLY ISO OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     NONE OF THE CHALLENGED STATEMENTS IS ACTIONABLE.........................2

        A.      The Challenged Statements Are All Non-Actionable Puffery ...............2

        B.      Plaintiffs Do Not Challenge The Veracity of Uber's Fact Specific
                Statements ................................................................................................7

        C.      Uber's Aspirational Statements Are Also Non-Actionable ...................8

III.    STATEMENTS TO MEDIA AND ON RECEIPTS ARE NOT
        ACTIONABLE ..................................................................................................10

        A.      Uber's Statements To The Media Are Protected Speech As A Matter
                Of Law....................................................................................................10

        B.      Information On Customer Receipts Is Not Advertising........................12

IV.     PLAINTIFFS ARE NOT ENTITLED TO RELIEF UNDER THE UCL OR
        FAL ..................................................................................................................14

        A.      Plaintiffs Lack Standing .......................................................................14

        B.      Plaintiffs Are Not Entitled To Restitution............................................15

V.      CONCLUSION ..................................................................................................15

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **Cases**

4

*Adler v. Royal Cruise Line, Ltd.,*
    No. C 95-1304 CW, 1996 WL 438799 (N.D. Cal. Mar. 20, 1996)....................................6

5

6

*Am. Italian Pasta Co. v. New World Pasta Co.,*
    371 F.3d 387 (8th Cir. 2004)..................................................................................................7

7

*Avery Dennison Corp. v. Acco Brands, Inc.,*
    No. CV99-1877DT(MCX), 1999 WL 33117262 (C.D. Cal. Oct. 12, 1999) .....................4

8

9

*Berkebile v. Brantly Helicopter Corp.,*
    462 Pa. 83 (1975) ..................................................................................................................3

10

*Bernstein v Extendicare Health Servs.,*
    607 F.Supp. 2d 1027 (D. Minn. 2009) .................................................................................4

11

12

*Bizcloud, Inc. v. Computer Sciences Corp.,*
    No. C-13-05999 JCS, 2014 WL 1724762 (N.D. Cal. Apr. 29, 2014)..............................15

13

*Boule v. Hutton,*
    328 F.3d 84 (2d Cir. 2003) ..................................................................................................10

14

15

*Casella v. Webb,*
    883 F.2d 805 (9th Cir. 1989)................................................................................................8

16

*Cont'l Airlines, Inc. v. McDonnell Douglas Corp.,*
    216 Cal. App. 3d 400 (1989)............................................................................................5, 6

17

18

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.,*
    911 F.2d 242 (9th Cir. 1990)............................................................................................2, 3

19

*Epicor Software Corp. v. Alternative Tech. Solutions, Inc.,*
    No. SACV 13-00448-CJC, 2013 WL 2382262 (C.D. Cal. May 9, 2013) ........................14

20

21

*Facenda v. N.F.L. Films, Inc.,*
    542 F.3d 1007 (3d Cir. 2008) ............................................................................................10

22

*Fraker v. KFC Corp.,*
    2006 U.S. Dist. LEXIS 79049 (S.D. Cal. Oct. 19, 2006)....................................................7

23

24

*Franklin v. Dynamic Details, Inc.,*
    116 Cal. App. 4th 375 (2004)...............................................................................................8

25

*Gillette Co. v. Norelco Consumer Products Co.,*
    946 F. Supp. 115 (D. Mass. 1996) .....................................................................................13

26

27

*Gonzalez v. Allstate Ins. Co.,*
    No. CV 04-1548FMCPJWX, 2005 WL 5891935 (C.D. Ca. Aug. 2, 2005) ....................13

28

*Greater Houston Transp. Co. v. Uber Technologies, Inc.,*
    No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015).............................6

**Page(s)**

*Hauter v. Zogart,*
    14 Cal. 3d 104 (1975).................................................................................................... 4, 5, 6

*Heidle v. Interval Int'l U.S.A. Corp.,*
    No. 01-CV-0663E(SR), 2003 WL 22383568 (W.D.N.Y. Sept. 9, 2003) .......................... 3

*Hoffman v. A. B. Chance Co.,*
    339 F. Supp. 1385 (M.D. Pa. 1972) .................................................................................. 3

*Hughes v. Panasonic Consumer Electronics Co.,*
    No. CIV.A. 10-846 SDW, 2011 WL 2976839 (D.N.J. July 21, 2011) .............................. 6

*In re Cornerstone Propane Partners,* L.P.,
    355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................................................ 6

*In Re Countrywide Fin. Sec. Litig.,*
    934 F. Supp. 2d 1219 (C.D. Cal. 2013)............................................................................. 7

*In re Facebook PPC Adver. Litig.,*
    No. 5:09-CV-03043-JF, 2010 WL 3341062 (N.D. Cal. Aug. 25, 2010) ......................... 14

*In re Ford Motor Co. E-350 Van Products Liab. Litig.* (No. II),
    No. CIV. A. 03-4558, 2010 WL 2813788 (D.N.J. July 9, 2010)....................................... 3

*In re Ford Motor Co. Sec. Litig., Class Action,*
    381 F.3d 563 (6th Cir. 2004).......................................................................................... 3, 9

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Products Liab.*
    *Litig.,*
    890 F. Supp. 2d 1210 (C.D. Cal. 2011)............................................................................ 6

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and*
    *Products Liab. Litig.,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010)............................................................................ 5

*Intertape Polymer Corp. v. Inspired Techs, Inc.,*
    725 F. Supp. 2d 1319 (M.D. Fla. 2010) ............................................................................ 6

*Irving v. Lennar Corp.,*
    No. 2:12-CV-0290 KJM EFB, 2013 WL 4900402 (E.D. Cal. Sept. 11,
    2013)................................................................................................................................... 3

*Kasky v. Nike, Inc.,*
    27 Cal. 4th 939 (2002).................................................................................................... 10

*Katiki v. Taser Int'l, Inc.,*
    No. 12-CV-05519 NC, 2013 WL 163668 (N.D. Cal. Jan. 15, 2013)............................... 13

*Korea Supply Co. v. Lockheed Martin Corp.,*
    29 Cal. 4th 1134 (2003).................................................................................................. 15

- iii -

**Page(s)**

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310 (2011) ...................................................................................... 14

*Language Line Servs. v. Language Servs. Assocs.,*
  2011 WL 5024281 (N.D. Cal. Oct. 13, 2011) ..................................................... 2

*Luxpro Corp. v. Apple Inc.,*
  No. C 10-03058 JSW, 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011) ............... 15

*Marable v. Nitchman,*
  511 F.3d 924 (9th Cir. 2007) ........................................................................... 10

*MGA Entm't, Inc. v. Mattel, Inc.,*
  No. CV05-2727NM(RNBX), 2005 WL 5894689 (C.D. Cal. Aug. 26, 2005) ................. 15

*Midwest Canvas Corp. v. Commonwealth Canvas, Inc.,*
  No. 07 C 0085, 2008 WL 162757 (N.D. Ill. Jan. 16, 2008) ............................... 13

*Newcal Indus., Inc. v. Ikon Office Solution,*
  513 F.3d 1038 (9th Cir. 2008) ..................................................................... 2, 4, 6

*Osborne v. Subaru of Am., Inc.,*
  198 Cal. App. 3d 646 (1988) .............................................................................. 6

*Private Jet Servs. v. Sky King, Inc.,*
  2006 WL 2864057 (D.N.H. Oct. 4, 2006) ........................................................... 3

*Reott v. Asia Trend, Inc.,*
  618 Pa. 228, 55 A.3d 1088 (2012) ..................................................................... 3

*Rice v. Fox Broadcasting, Co.,*
  330 F.3d 1170 (9th Cir. 2003) ......................................................................... 12

*Sigma Dynamics, Inc. v. E. Piphany, Inc.,*
  No. C 04-0569 MJJ, 2004 WL 2648370 (N.D. Cal. June 25, 2004) ................... 12

*SKEDKO, Inc. v. ARP Products, LLC,*
  No. 3:13-CV-00696-HA 2014 WL 246557 (D. Or. June 2, 2014) ................ 10, 11

*Southland Sod Farms v. Stover Seed Co.,*
  108 F.3d 1134 (9th Cir. 1997) ........................................................................... 2

*Strougo v. Barclays PLC,*
  No. 14-CV-5797 SAS, 2015 WL 1883201 (S.D.N.Y. Apr. 24, 2015) .................. 9

*Tylka v. Gerber Prods.,*
  1999 WL 495126 (N.D. Ill. July 1, 1999) ........................................................... 4

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.,*
  709 F. Supp. 2d 821 (C.D. Cal. 2010) .................................................... 1, 2, 10, 11

**Page(s)**

*U.S. Legal Support, Inc. v. Hofioni,*
   No. CIV. S-13-01770 LKK, 2013 WL 6844756 (E.D. Cal. Dec. 20, 2013)..................... 14

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.,*
   No. 2:09CV02067-MCE-GGH, 2010 WL 1611398 (E.D. Cal. Apr. 20,
   2010)........................................................................................................................... 14

**Other Authorities**

San Francisco Metro Transit Authority, *How to Become A Taxi Driver,*
   https://www.sfmta.com/services/taxi-industry/become-taxi-driver (last
   visited June 25, 2015)...................................................................................................... 7

Yellow Radio Service, FACEBOOK, (Oct. 28, 2014)
   https://www.facebook.com/SDyellowcab/posts/828089043916414 ................................. 4

1  **I.      INTRODUCTION**

2          Plaintiff taxi companies seek to use this false advertising case to take Uber's profits, yet

3  they cannot identify a single fact specific representation made by Uber that is false or misleading.

4  *Indeed, Plaintiffs tacitly concede (as they must) that Uber's factually specific statements*

5  *describing its safety features are true*.  So, to manufacture "falsity," Plaintiffs cherry pick Uber's

6  vague and unmeasurable statements of product superiority and argue that, because these

7  statements do not comport with Plaintiffs' own opinion of what constitutes "industry leading" or

8  "best in class safety," then they must be actionable.  The argument fails for multiple reasons.

9          ***First***, the Motion cited extensive case law holding that language nearly identical to the

10  statements Plaintiffs challenge is puffery.  Plaintiffs fail in their attempt to distinguish this

11  authority, and their assertion that all "safety"-related statements are automatically not puffery

12  finds no support in the authority Plaintiffs cite and runs contrary to case law throughout the

13  country.  While *specific and measurable* representations involving "safety" (like other subjects)

14  can be actionable, none of the challenged statements meet this standard.  Thus, while Plaintiffs

15  proclaim the Motion is a "retreat" from Uber's marketing, the opposite is true.  Uber stands behind

16  the truth of its marketing.  But "[w]hether a statement is puffery does not depend on the truth or

17  falsity of a statement; *it depends on the degree of generality or specificity*."  *TYR Sport, Inc. v.*

18  *Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 830 (C.D. Cal. 2010) (emphasis added).

19          ***Second***, when Plaintiffs do discuss Uber's fact specific statements, they do not (and

20  cannot) allege that any of them are false.  Instead, Plaintiffs argue that these truthful specific

21  factual statements might somehow confuse consumers into reaching the "wrong" opinion about

22  what is "industry leading," *i.e.* an opinion that Plaintiffs do not share.  *Compare* Mot. at 6:20-8:6;

23  *with* Opp. at 10:16-11:8 (citing no authority).  But this theory is contrary to law.  True and specific

24  factual statements cannot render puffery actionable, and false advertising law is not a tool for

25  competitors who are failing in the marketplace to reshape consumers' opinions.

26          ***Third***, Uber's statements to the news media are protected speech.  In arguing otherwise,

27  Plaintiffs rely on inapposite authority involving articles either authored by the defendant or

28  appearing in trade publications.  In contrast, Uber's statements appeared in general news

1   publications over which it had no editorial control, and Plaintiffs cite no authority holding that

2   such material can be the basis of a Lanham Act or state law false advertising claim.

3        **Fourth**, Plaintiffs lack standing under the Unfair Competition Law (UCL) and are not

4   entitled to restitution under the UCL or the False Advertising Law (FAL).  Well settled law holds

5   that plaintiffs do not have a legally protected interest in prospective earnings from consumers with

6   whom they have no contractual relationship.

7        For all of these reasons and those set forth below, the Court should grant Uber's Motion.

8   **II.     NONE OF THE CHALLENGED STATEMENTS IS ACTIONABLE**

9        Each statement challenged in the complaint is non-actionable puffery, and several of the

10  challenged statements fail for the additional and related reasons that they are taken out of context

11  and/or are aspirational.  None of Plaintiffs' arguments to the contrary has any merit.

12       A.    <u>The Challenged Statements Are All Non-Actionable Puffery</u>

13       As Plaintiffs' own proffered authority provides, a statement is only actionable if it

14  advances a "specific" and "quantifiable" claim.  *Newcal Indus., Inc. v. Ikon Office Solution*, 513

15  F.3d 1038, 1053 (9th Cir. 2008).  In contrast, "a general, subjective claim about a product is non-

16  actionable puffery."  *Id.*; *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145

17  (9th Cir. 1997) (contrasting "specific and measurable advertisement claim[s] of product

18  superiority based on product testing" with "vague or highly subjective" statements that are non-

19  actionable).  Accordingly, Plaintiffs' assertion that Uber's statements cannot be puffery because

20  Uber asserts that they are true (Opp. at 10:13-14) "misses the point."  *TYR Sport,* 709 F. Supp. 2d

21  at 830.  "Whether a statement is puffery does not depend on the truth or falsity of a statement; it

22  depends on the degree of generality or specificity."  *Id.*  This is because "consumer reliance will

23  be induced by specific rather than general assertions."  *Cook, Perkiss & Liehe, Inc. v. N.*

24  *California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990); *see also Language Line Servs.*

25  *v. Language Servs. Assocs.,* No. C10-02605 2011 WL 5024281, *12 (N.D. Cal. Oct. 13, 2011)

26  ("To be actionable on the basis of false advertising under the Lanham Act, a statement must be a

27  'specific and measurable' advertisement claim of product superiority.") (citations omitted).

28       Uber's Motion cited a litany of authority holding statements *virtually identical* to those

1   challenged in this case to be non-actionable puffery.  *See, e.g.,* Mot. at 4.  In response, Plaintiffs

2   contend that:  (i) some of that authority is inapposite because it involves securities fraud claims

3   (Opp. at 8:7-9); and (ii) anytime a statement mentions the word, or concerns the topic of, "safety"

4   (Opp. at 6:14-15) it cannot possibly be puffery.  Both assertions fail as a matter of law.

5         As for the purported securities fraud distinction, a seminal Ninth Circuit case holding

6   puffery to be non-actionable in the false advertising context did so relying upon securities fraud

7   authority.  *Cook,* 911 F.2d at 245-246.  This makes sense, because when assessing a company's

8   stock, investors are often trying to predict how customers will react to the company's statements.

9   Accordingly, investors ignore generic and immeasurable puffery because consumers ignore it.

10        As for Plaintiffs' insistence that *any* statement regarding "safety" is necessarily actionable

11   (Opp. at 6:14-15), the law mandates a contrary conclusion.  Courts in both this Circuit and

12   elsewhere have consistently held that "safety"-related claims, just like other subject matters, are

13   non-actionable if they are general, rather than specific and measurable.  *See Irving v. Lennar*

14   *Corp.*, No. 2:12-CV-0290 KJM EFB, 2013 WL 4900402, at *3, *9 (E.D. Cal. Sept. 11, 2013)

15   (promise to provide "safe and secure" neighborhoods was puffery); *see also In re Ford Motor Co.*

16   *Sec. Litig., Class Action*, 381 F.3d 563, 570 (6th Cir. 2004) ("Ford is a worldwide leader in

17   automotive safety" was non-actionable puffery); *In re Ford Motor Co. E-350 Van Products Liab.*

18   *Litig.* (No. II), No. CIV. A. 03-4558, 2010 WL 2813788, at *40 (D.N.J. July 9, 2010) ("[N]on-

19   specific statements regarding the general safety of a product [are] mere puffing."); *Private Jet*

20   *Servs. v. Sky King, Inc.*, No. 05-cv-98 2006 WL 2864057, *5 (D.N.H. Oct. 4, 2006) (airline's

21   statement "operating at the highest attainable level of safety" was puffery); *Heidl v. Interval Int'l*

22   *U.S.A. Corp.*, No. 01-CV-0663E(SR), 2003 WL 22383568, at *3 (W.D.N.Y. Sept. 9, 2003) (offer

23   of "quality and safe resorts" was mere "puffery"); *Berkebile v. Brantly Helicopter Corp.*, 462 Pa.

24   83, 103 (1975) (representation that products were "safe [and] dependable" was "puffing")

25   *abrogated on other grounds by Reott v. Asia Trend, Inc.*, 618 Pa. 228, 55 A.3d 1088 (2012);

26   *Hoffman v. A. B. Chance Co.*, 339 F. Supp. 1385, 1388 (M.D. Pa. 1972) ("The general

27   representation that a product 'offered unprecedented safety' is a statement of opinion and is in the

28

3442168                    DEFS' REPLY ISO OF MOTION TO DISMISS

1  nature of seller's 'puffing.'").[1]  The pertinent question is not whether the statement is about

2  "safety," it is whether the statement advances a "specific" and "quantifiable" claim.  *See Newcal*,

3  513 F.3d at 1053.  None of Uber's challenged statements meet this standard.

4        Unable to meaningfully distinguish Uber's statements from the statements held to be

5  puffery, Plaintiffs assert that "Uber misrepresents specific characteristics of its safety protocol."

6  Opp. at 9:5.  However, Plaintiffs do not identify which "specific characteristics of the safety

7  protocol" Uber supposedly misrepresented.  Instead, Plaintiffs assert in a footnote that Uber's

8  statements must be more than puffery because Uber has changed its website language over time.

9  Opp. at 9 n.15.  However, Uber's website language is constantly being updated and changed.  The

10  mere fact that Uber no longer includes certain puffery on its website does not magically transform

11  the puffery into actionable statements.  Indeed, courts within the Ninth Circuit have held that

12  changes to product advertising is inadmissible to show that the prior advertising violated the

13  Lanham Act.  *See, e.g., Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99-1877DT(MCX),

14  1999 WL 33117262, at *7 n.4 (C.D. Cal. Oct. 12, 1999).

15        Perhaps the best demonstration of the core failing of Plaintiffs' argument is their own

16  advertising.  For instance, plaintiff Administrative Services SD, LLC dba Yellow Radio Service,

17  advertises:  "So much to do in San Diego - taking the family to Seaworld?  Need a ride?  Call the

18  *safest and most reliable* taxi company in San Diego."[2]  Under Plaintiffs' flawed theory, unless

19  plaintiff Administrative Services happens to be first place in every conceivable safety metric under

20  the sun, then its own advertising is actionable and Plaintiffs should be suing each other.

21        In addition to failing to effectively distinguish Uber's puffery authority, Plaintiffs'

22  proffered case law does not help them.  For example, in *Hauter v. Zogarts*, Plaintiffs' principal

23

24        [1] As demonstrated by the above authority, the puffery doctrine applies regardless of the
    defendant's industry.  The guiding question is specificity and measurability.  *See also Bernstein v*
25  *Extendicare Health Servs.*, 607 F. Supp. 2d 1027, (D. Minn. 2009) ("rigorous standards" – even
    when applied to nursing home care that was allegedly unlawful – was non-actionable puffery);
26  *Tylka v. Gerber Prods.*, No. 96 C 1647 1999 WL 495126, *2 (N.D. Ill. July 1, 1999) (statements
    "world leader in . . . infant nutrition" and "nutritionally, you can't buy a better baby food," were
27  puffery).

28        [2] Yellow Radio Service, FACEBOOK, (Oct. 28, 2014) (emphasis added)
    https://www.facebook.com/SDyellowcab/posts/828089043916414.

safety case, the maker of a golf training device specifically advertised that the device was "Completely Safe" in that the "Ball Will Not Hit Player."  14 Cal. 3d 104, 109 (1975).  The plaintiff then suffered this very injury (being struck in the head by the golf ball rendering him an epileptic).  As the *Hauter* court stressed, the defendant's representation that "the ball will not hit the player, [does] not indicate the seller's subjective opinion about the merits of his product but rather factually describes an important characteristic of the product."  *Id* at 112.  It was also eminently measurable and specific, as the device did precisely what the advertising said it could not possibly do:  hit the player.  None of Uber's challenged statements meet this standard.  Also, contrary to Plaintiffs' contention that "safety" related advertising is never puffery (Opp. at 6:14-15), *Hauter* itself states:  "If defendant's assertion of safety is merely a statement of opinion – mere 'puffing' – they cannot be held liable for falsity."[3]  *Id.* at 111.

Similarly, Plaintiffs cite *Cont'l Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388 (1989).  In that case, an airplane manufacturer made several excruciatingly detailed representations in a brochure assuring that its aircraft fuel tanks would not rupture during a crash, such as:  "the support structure is designed to a higher strength than the gear to prevent fuel tank rupture due to an accidental landing gear overload."  *Id.* at 400.  After the plane's fuel tank ruptured during an accident, the court held that these "absolute guarantees of the brochures" were not just "puffery."  *Id.* at 400, 424.

Other cases cited by Plaintiffs similarly contain detailed and measurable representations regarding particular safety features.  For example, in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, the defendant automaker had "made specific misdescriptions of its vehicles," including the measurable claim that its electronic throttle system "makes it possible to achieve 'shorter activation times leading reasonable consumers to believe that their brakes would activate more quickly than usual rather than potentially not at all.'"

---

[3] Because *Hauter* involved consumer injury, the court construed the defendant's statement that the ball could not hit the player "liberally in favor of [the] injured consumer[]," an approach inapposite in this alleged competitor case.  *See Hauter,* 14 Cal. 3d at 112.

754 F. Supp. 2d 1145, 1176-77 (C.D. Cal. 2010) (citing and relying on *Continental Airlines*).[4]

Similarly, in *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Products Liab. Litig.*, the court held that "*specific statements* . . . regarding the safety and functionality of the brake system and the ABS" were not puffery.  890 F. Supp. 2d 1210, 1220 (C.D. Cal. 2011) (emphasis added).  Plaintiffs do not, and cannot, identify such fact-specific representations here.

Finally, in footnote 16 of their opposition, Plaintiffs cite three district court cases – all of which stand for the proposition that "safety" related statements *can* be actionable.  However, that begs the salient question of whether Uber's safety related statements are sufficiently "specific" and "measurable" to make them actionable.  *Newcal*, 513 F.3d at 1053.  They are not, and Plaintiffs' opposition includes no explanation of how statements like "industry leading" background checks (terms used eight times throughout the opposition – Opp. at 2, 3, 6, 10, 11, 17) can be quantified so as to prove they are "false."  Courts *repeatedly* have held that such statements cannot be measured and that is why they are puffery.  *See, e.g., In re Cornerstone Propane Partners*, L.P., 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005) ("claims of 'industry leading' growth" are puffery); *Intertape Polymer Corp. v. Inspired Technologies, Inc.*, 725 F. Supp. 2d 1319, 1334-35 (M.D. Fla. 2010) ("'industry leading' is classic puffery"); *Hughes v. Panasonic Consumer Electronics Co.*, No. CIV.A. 10-846 SDW, 2011 WL 2976839, at *12 (D.N.J. July 21, 2011) ("industry leading" is not a "statement[] of fact, but rather [a] subjective expression[] of opinion") (internal quotation marks omitted).  For instance, Plaintiffs proclaim that "Live Scan" fingerprinting makes their background checks "industry leading."  Opp. at 3:18-24.  But that is an *ipse dixit*, not measurement or quantification.  For instance, in San Francisco, one can drive a taxi

---

[4] Plaintiffs rely on three cases that did not involve safety-related statements at all.  In *Adler v. Royal Cruise Line, Ltd.*, the court expressly noted that the defendant did not make any safety representations.  No. C 95-1304 CW, 1996 WL 438799, at *12 (N.D. Cal. Mar. 20, 1996).  In dicta, the court cited *Hauter*, which is distinguishable as demonstrated, *supra.*  The same holds true for *Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 660 n.8 (1988).  Plaintiffs also rely on *Greater Houston Transp. Co. v. Uber Technologies, Inc.*, No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015), but there, the court merely stated, again in dicta, that Uber's statements regarding safety *could* be actionable to the extent they were "specific and measurable."  *Id.* at *13.  However, it had no occasion to address that issue because the plaintiffs had failed to allege that any of Uber's safety-related statements were false or misleading.  *Id.*

---

- 6 -

even with a recent DUI, but that person is disqualified from being an Uber driver partner.[5]  This

demonstrates that background check efficacy cannot be measured simply by whether it includes

fingerprinting, and it also demonstrates why courts refuse to serve as referee over amorphous

terms like "industry leading" in business advertising.

In summary, none of the statements challenged by the complaint are sufficiently specific

and measurable to be actionable.  They are all classic puffery.

B.      Plaintiffs Do Not Challenge The Veracity of Uber's Fact Specific Statements

As the Motion demonstrates, the complaint cherry picks Uber's vague and general

statements regarding its safety efforts while ignoring the *specific factual statements* that give the

puffery context (and which are unchallenged by the complaint).  Mot. at 6:18-8:6.  Plaintiffs

ignore the authority the Motion cites which rejects this tactic.  *Id.* at 7:19-8:3 (citing *Am. Italian

Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 392 (8th Cir. 2004) and *Fraker v. KFC Corp.*,

No. 06cv1284 2006 U.S. Dist. LEXIS 79049, *10-11 (S.D. Cal. Oct. 19, 2006)).

Unable to attack Uber's specific factual statements about its safety practices, Plaintiffs

resort to loaded rhetoric.  They decry that Uber must be unsafe because its "business hinges on

convincing consumers to get into a stranger's car," apparently forgetting that taxi drivers are

"strangers" to most of their customers.  Opp. at 6:6-8.  Moreover, Uber riders can in fact view

whom their driver will be and study user generated ratings of their driver in advance of accepting a

ride (none of which Plaintiffs contest).  *See* Dkt. No. 16-4 ("Uber's Safety Webpage") at 4.[6]

Plaintiffs add false logic to their loaded rhetoric.  They concede that Uber provides specific

factual detail delineating the contours of its background checks, for instance that Uber "screens

criminal records going back seven years" and "conducts county, federal, and multi-state checks."

---

[5] *Compare* San Francisco Metro Transit Authority, "How to Become A Taxi Driver," https://www.sfmta.com/services/taxi-industry/become-taxi-driver (last visited June 25, 2015) (prohibiting drivers from having "two or more recent convictions of driving under the influence within the previous five years") *with* Dkt. No. 16-5 ("Uber Background Check Web Page") (prohibiting anyone with a DUI within past seven years from becoming an Uber provider).

[6] Plaintiffs' citation to a bald assertion made by the San Francisco District Attorney in connection with a politicized lawsuit is similarly flawed. Opp. at 2:10-12.  Unproven allegations by other plaintiffs – including city politicians – are legally irrelevant.  *See, e.g., In Re Countrywide Fin. Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013) ("paragraphs in a complaint that are either based on, or rely on, complaints in other actions . . . are, as a matter of law, immaterial.").

1   Opp. at 11:5-7. Plaintiffs do not challenge the veracity of *any* of these specific factual statements.

2   *Id.* Instead, they argue that "it is therefore certainly plausible that a consumer would *believe* that

3   an 'industry-leading' background check" is one that has these characteristics, and that this belief

4   would be wrong – presumably because plaintiffs "believe" their checks lead the industry. *Id.* at

5   11:5-11 (emphasis added). This is not a false advertising claim, it is a sophism. A defendant does

6   not commit false advertising because it states true facts, just because those true facts could cause a

7   consumer to "believe" something the plaintiff disagrees with. Indeed, Plaintiffs' position (for

8   which they cite no authority) turns puffery law on its head. While it is true that puffery may be

9   actionable when it is used to "emphasize, specific *mis*representations of fact," *Casella v. Webb*,

10  883 F.2d 805, 808 (9th Cir. 1989) (emphasis added), Plaintiffs cite no authority (and Uber is

11  aware of none) that true factual statements can transmogrify puffery into an actionable falsehood.

12  Indeed, "[w]hen the facts supporting an opinion are disclosed, readers are free to accept or reject

13  the author's opinion based on their own independent evaluation of the facts." *Franklin v.*

14  *Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 387 (2004) (quotation marks omitted). So too here.

15          In summary, all of the statements below fail to state a claim  both because they are puffery.

16  and because Plaintiffs do not dispute the truth of Uber's fact specific representations:

17      • "Uber is 'GOING THE DISTANCE TO PUT PEOPLE FIRST'" and has the
         "SAFEST RIDES ON THE ROAD." (Complaint ¶ 42)
18
19      • Uber is committed to connecting you to the safest ride on the road. That means
         setting the strictest safety standards possible, then working hard to improve them
20        every day." (*Id.* ¶ 43)

21      • Uber's statement that it provides "BACKGROUND CHECKS YOU CAN
         TRUST." (*Id.* ¶ 56)
22
        • "Every ridesharing and livery driver is thoroughly screened through a rigorous
23        process we've developed using industry-leading standards." (*Id.* ¶ 57)

24      C.      Uber's Aspirational Statements Are Also Non-Actionable

25          Plaintiffs do not (and cannot) argue that aspirational statements are actionable. Instead,

26  they contend that just *two* of the numerous aspirational statements identified in the Motion also

27  allegedly contain actionable statements of fact. *Compare* Mot. at 6:3-13; *with* Opp. at 9:10-12.

28

- 8 -

First, Plaintiffs argue that five words (*viz.* "the strictest safety standards possible") out of the following statement are actionable:  "Uber is committed to connecting you to the safest ride on the road.  That means setting the strictest safety standards possible, then working hard to improve them every day."  Mot. at 6:3-5.  However, the five words cannot be divorced from their context, which uses aspirational terms such as "committed" and "working hard to improve."[7]  And even the five words that Plaintiffs focus upon are classic puffery.  *See* Section II.A, at pp. 2-4, *supra*; *see, e.g., Strougo v. Barclays PLC*, No. 14-CV-5797 SAS, 2015 WL 1883201, at *8 (S.D.N.Y. Apr. 24, 2015) (statement that defendant was "committed to robust oversight in the form of a world-class compliance function" was not actionable).

Next, Plaintiffs challenge four words ("safest transportation option available") out of the following statement:  "We continue to improve and are always working hard to tighten our policies and processes to ensure that Uber remains the safest transportation option available."  But when the four words are read in context, they are clearly an expression of optimism.  And even the four words Plaintiffs pull from context are non-actionable puffery.  Section II.A, at pp. 2-4, *supra*; *see, e.g., In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d at 570 ("worldwide leader in automotive safety" was non-actionable puffery) .

Accordingly, the following statements are non-actionable both because they are puffery and because they are aspirational:

- Uber is *committed* to connecting you to the safest ride on the road.  That means setting the strictest safety standards possible, then *working hard to improve* them every day."  (Complaint ¶ 43 (emphasis added))

- "Uber *works hard to ensure* that we are connecting riders with the safest rides on the road.  The current *efforts we are undertaking* to protect riders, drivers and cities are *just the beginning.  We'll continue innovating, refining, and working diligently to ensure we're doing everything we can* to make Uber the safest experience on the road."  (*Id.* ¶ 44 (emphasis added))

- "We are *committed to improving* the already best in class safety and accountability of the Uber platform, for both riders and drivers."  (*Id.* ¶ 45 (emphasis added))

- "This Safe Rides Fee supports our *continued efforts to ensure* the safest possible

---

[7] A reasonable consumer would not interpret this statement to mean that Uber has already achieved the highest standard of safety on every possible metric.  Otherwise, it would be impossible for Uber to "improve" upon safety.

platform for Uber riders and drivers." (*Id.* ¶ 61 (emphasis added))

- "We *continue to improve* and are *always working hard* to tighten our policies and processes to ensure that Uber remains the safest transportation option available." (*Id.* ¶ 64 (emphasis added))

## III.    STATEMENTS TO MEDIA AND ON RECEIPTS ARE NOT ACTIONABLE

Searching desperately for a false advertising hook, Plaintiffs resort to plucking words from a Detroit online newspaper article, a "Mashable.com" news report, and an NBC online newspaper article. But all of this is non-actionable, constitutionally protected speech. And Plaintiffs' naked assertion that post-purchase receipts are "false advertising" is flatly contrary to the law.

A.    Uber's Statements To The Media Are Protected Speech As A Matter Of Law

As a threshold matter, Plaintiffs incorrectly assert, without citing any authority, that whether a statement constitutes protected speech is a fact issue. Opp. at 14:11-13. In fact, "[t]he inquiry into the protected status of speech is one of law, not fact." *Marable v. Nitchman*, 511 F.3d 924, 930 (9th Cir. 2007) (internal quotation marks omitted); *see also Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1016 (3d Cir. 2008) ("[T]he categorization of speech is a question of law."). Accordingly, where, as here, a plaintiff relies on statements "quoted" in a news "article," courts "have little hesitation in deciding that as a matter of law . . . [the] statements quoted in that article are not commercial speech." *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003).

Plaintiffs also fail to cite a single case holding that a statement appearing in a general news publication that was not authored by the defendant is actionable. Instead, Plaintiffs rely on inapposite authorities. They cite *Kasky v. Nike, Inc.,* but that case concerned letters-to-the-editor that were written by the defendant. 27 Cal. 4th 939, 951 (2002). This is critically different from Uber's statements here, which were made in response to a reporter's questions, and where the media outlet retained editorial control over the article. *TYR Sport, Inc.,* 709 F. Supp. 2d at 829 (statements made in response to questions that appeared in a news article of which defendant was not the author were not commercial speech).

Plaintiffs also cite *SKEDKO, Inc. v. ARP Products, LLC,* but that case involved statements made to a specialized journal that was "targeted toward plaintiff's primary customer." No. 3:13-

1   CV-00696-HA 2014 WL 2465577, *6 (D. Or. June 2, 2014).  In contrast, Uber's statements

2   appeared in general news publications.  As the *TYR* Court noted, trade publications have a distinct

3   commercial character that news publications targeted at a general audience do not.  *See* 709 F.

4   Supp. 2d at 829.  Further, the article in *SKEDKO* was essentially a puff piece that "appeared in

5   close proximity to a paid Skedco advertisement."  *SKEDCO,* 2014 WL 246557, at *5.  The court

6   thus concluded that it could not "find a purpose behind [the executive's] statements other than to

7   promote his company's product."  *Id.*  In contrast, Uber's statements appeared in articles that were

8   largely critical of Uber's safety efforts – hardly an advertising vehicle.  *See* Dkt. Nos. 16-6-16-9.

9        Also unavailing is Plaintiffs' assertion that Uber's statements were "canned" or non-

10   responsive.  Opp. at 13:17-14:10 (citing no authority).  Even if this were true (it is not), speech

11   does not lose First Amendment protection because it purportedly does not directly respond to a

12   reporter's question.  Were this so, most statements made to the media would be unprotected.

13        In any event, Uber's answers were not "canned;" they addressed the reporter's unsolicited

14   questions.  For example, in the Detroit online article, which concerned an investigation into the

15   effectiveness of Uber's background checks and insurance requirements, Uber provided a statement

16   explaining what its background checks include and what insurance policies drivers are required to

17   carry (neither of which Plaintiffs challenge as being false).  Dkt. No. 16-6 at 2-3.  The responses

18   were thus "inextricably intertwined" with the article's topic.  *TYR Sport, Inc.,* 709 F. Supp. at 818.

19        Similarly, Plaintiffs mischaracterize the mahshable.com article as being exclusively about

20   two specific safety incidents when in fact it was about Uber's safety standards more generally.

21   *See* Dkt. No. 16-7.  Once again, Uber provided a detailed account of its safety efforts in response

22   to the reporter's questions, making the statements inextricably intertwined with the article.

23        Finally, in the NBC article, Plaintiffs allege that Uber failed to give a "meaningful"

24   response to the reporter's question and unfairly maligned the safety standards of taxi companies

25   when the article was not about taxi safety.  Opp. at 14.  However, the fact that Plaintiffs personally

26   do not find Uber's response "meaningful" is irrelevant for First Amendment purposes.  Further,

27   even if it mattered (it does not), Uber did not extraneously introduce taxis into the article.  The

28   reporter quoted other sources who also compared Uber to taxis.  Dkt. No. 16-8 at 2 (quoting one

- 11 -

source as stating, "'you go step in a cab, you've got coverage' . . . 'I stepped into an Uber car and I have to question whether or not I'm going to be covered if there's an accident?'").

In summary, there is no basis under the law to treat answers to questions by the media placed in newspapers over which Uber does not have editorial control as false advertising. Accordingly, the following statements are non-actionable as a matter of law:

- "What I can tell you is that Uber takes passenger safety very seriously. We work every day to connect riders with the safest rides on the road and go above and beyond local requirements in every city we operate."  (Complaint ¶ 63)

- "Uber only partners with drivers who pass an industry-leading screening that includes a criminal background check at the county, federal and multistate level going back as far as the law allows. We also conduct ongoing reviews of drivers' motor vehicle records during their time as an Uber partner."  (*Id.* ¶ 63)

- "For more information on what makes Uber *the safest rides on the road*, please see our website . . . ."  (*Id.* ¶ 63)

- "Uber's industry-leading background checks help connect consumers with the safest ride on the road . . . . Our driver partner background checks are more thorough than those of taxi [sic] in most cities . . . . We continue to improve and are always working hard to tighten our policies and processes to ensure that Uber remains the safest transportation option available."  (*Id.* ¶ 64)

- "We're confident that every ride on the Uber platform is safer than a taxi."[8]  (*Id.* ¶ 65)

B.      Information On Customer Receipts Is Not Advertising

Statements not aimed at influencing future purchasing decisions do not qualify as advertisements.  Mot. at 10:10-22.  Plaintiffs insist that "it is plausible that passengers who use UberX, and read Uber's justification for the one dollar fee, are influenced into using UberX in the future."  *Id.* at 14:21-22.  However, statements that "may have an incidental effect of promoting goods to customers are not within the reach of the Lanham Act."  *Sigma Dynamics, Inc. v. E. Piphany, Inc.*, No. C 04-0569 MJJ, 2004 WL 2648370, at *3 (N.D. Cal. June 25, 2004).  Rather, Plaintiffs must show that the Safe Rides Fee statements were made "for the purpose of influencing consumers to buy defendant's goods or services."  *Rice v. Fox Broadcasting, Co.*, 330 F.3d 1170,

---

[8] In addition to being protected speech, this statement is also non-actionable as an expression of confidence.  *See  Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1036-37 (N.D. Cal. 2012) (statement beginning with "[w]e are confident" was non-actionable).

1181 (9th Cir. 2003). In contrast, here the statements were made for the purpose of explaining to consumers, *who have already chosen to use Uber*, why a charge appears on their receipts.[9] By then, the decision to purchase was already made.

District courts repeatedly have held that after-purchase statements made to consumers – including on receipts – do not qualify as advertising because they are not directed at securing future business. *See, e.g., Gonzalez v. Allstate Ins. Co.*, No. CV 04-1548FMC(PJWX), 2005 WL 5891935, at *8 (C.D. Ca. Aug. 2, 2005); *Midwest Canvas Corp. v. Commonwealth Canvas, Inc.*, No. 07 C 0085, 2008 WL 162757, at *3 (N.D. Ill. Jan. 16, 2008) ("[A]n invoice cannot be advertising because it is not an inducement to buy, but rather reflects an agreed-upon transaction."). Plaintiffs argue that because riders might ride again, that should lead to a different result here – without citing any authority. Opp. at 14:16-15:1. Actually, even where customers are potential repeat customers, courts have applied the rule that post-purchase statements are not actionable. *See, e.g., Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 135 (D. Mass. 1996) (competitor's statement in a package insert that its razors provided a "closer, much more comfortable shave" were not advertising because they "[did] not affect the choice to purchase, that choice having been made at an earlier point.").

Accordingly, the following post-sale statement is non-actionable as a matter of law:

> "What Is The Safe Rides Fee? From the beginning, we've always been committed to connecting you with the safest rides on the road. The Safe Rides Fee is a fee added to uberX fares on behalf of drivers (who may pay this fee to Uber) in cities with uberX ridesharing. This Safe Rides Fee supports continued efforts to ensure the safest possible platform for Uber riders and drivers . . . . For complete pricing transparency, you'll see this as a separate line item on every uberX receipt. In the U.S., the Safe Rides Fee is always $1 USD. In Canada, it is $1 CAD."

---

[9] Plaintiffs' gripe over the Safe Rides Fee is an oddity. *See* Complaint ¶ 52. The "Safe Rides Fee" says nothing about Plaintiffs' taxi cabs, so it cannot be falsifying anything about them or misleading anyone about them. And there is no logic to Plaintiffs' supposition (*id.*) that any time a competitor separately itemizes a charge on a receipt, that competitor is implicitly comparing itself to others by doing so. For instance, if a restaurant charged a "clean up" fee and separately itemized it on its bill, that would not mean it was contending that all other restaurants were dirty. Such "unreasonable inferences" cannot support a cause of action. *See Katiki v. Taser Int'l, Inc.*, No. 12-CV-05519 NC, 2013 WL 163668, at *2 (N.D. Cal. Jan. 15, 2013). Moreover, even if the Safe Rides Fee description were advertising (it is not), the challenged language is too general and unquantifiable to constitute an actionable statement. *See, supra,* Section II.A.

## IV.    PLAINTIFFS ARE NOT ENTITLED TO RELIEF UNDER THE UCL OR FAL

Plaintiffs' UCL claim fails for lack of standing, and the complaint's request for restitution under the FAL and UCL fails as a matter of law.

### A.    Plaintiffs Lack Standing

Plaintiffs cannot seek relief under the UCL's fraud prong for alleged misrepresentations made, not to them, but to third parties.  Plaintiffs' contention otherwise is directly contrary to the multiple courts in this district holding that the reliance of *consumers* on a defendant's alleged misrepresentations does not confer standing on alleged competitors.  Mot. 11-12.  Plaintiffs ask this court to disregard the holding of its sister courts on the basis of two out-of-district cases.  Opp. at 15:9-13 (citing *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, No. 2:09CV02067-MCE-GGH, 2010 WL 1611398, at *2 (E.D. Cal. Apr. 20, 2010) and *Epicor Software Corp. v. Alternative Tech. Solutions, Inc.*, No. SACV 13-00448-CJC, 2013 WL 2382262, at *1 (C.D. Cal. May 9, 2013)). However, *Epicor Software* does not even discuss the reliance requirement.  And Eastern District authority post-dating *VP Racing Fuels* is in line with the Northern District cases cited in the Motion.  *See U.S. Legal Support, Inc. v. Hofioni,* No. CIV. S-13-01770 LKK, 2013 WL 6844756, at *15 (E.D. Cal. Dec. 20, 2013) ("As Plaintiff is not a consumer of Defendants' services, it cannot demonstrate reliance on Defendants' fraudulent statements in order to establish standing . . . .").

Plaintiffs also argue that, even if they lack standing under the UCL fraud prong, they may still seek relief under the UCL's unfair and unlawful prongs.  However, because Plaintiffs' unfair and unlawful claims are predicated on the same conduct as their claim under the fraud prong, Plaintiffs cannot avoid the UCL's reliance requirement.  *See* Complaint ¶¶ 133-34; *In re Facebook PPC Adver. Litig.*, No. 5:09-CV-03043-JF, 2010 WL 3341062, at *11 (N.D. Cal. Aug. 25, 2010) ("Because Plaintiffs' allegations . . . are premised on a fraud theory involving misrepresentations … they must allege reliance, irrespective of whether the claims are asserted under the fraud prong or the unfair prong of the UCL."); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 n.9 (2011) (holding the same under the unlawful prong).  Accordingly, the Court should dismiss Plaintiffs' UCL claim in its entirety.

B.   Plaintiffs Are Not Entitled To Restitution

Under well settled UCL/FAL law, a plaintiff does not have a vested interest in prospective profits it has purportedly lost to a competitor and therefore cannot recover restitution on this basis. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). Plaintiffs nonetheless argue that it is "too early" to decide this issue. Opp. at 15:8-10. Actually, courts in this district routinely dismiss claims for restitution at the motion to dismiss stage because this question can be determined as a matter of law. *See, e.g., Bizcloud, Inc. v. Computer Sciences Corp.*, No. C-13-05999 JCS, 2014 WL 1724762, at *4 (N.D. Cal. Apr. 29, 2014) (dismissing UCL claim that sought disgorgement of profits by competitor).

Plaintiffs cite *Luxpro Corp. v. Apple Inc.* for the proposition that they might have a right to restitution (but one they need discovery to find). No. C 10-03058 JSW, 2011 WL 3566616 (N.D. Cal. Aug. 12, 2011). *Luxpro* actually supports Uber's position. The *Luxpro* plaintiff alleged a claim for tortious interference *with an existing contract*. *Id.* at *8. The court explained that a contract may constitute a "vested" interest depending on its terms. *Id.* But it expressly distinguished this type of claim from those, such as false advertising, in which a Plaintiff seeks to recover for "lost business opportunities and potential future revenues with entities with whom it did not have a contractual relationship." *Id.* This is "exactly the type of nonrestitutionary disgorgement precluded under *Korea Supply*." *Id.* Here, Plaintiffs have not alleged any existing contractual relationship with Uber users, so their argument fails via their own authority.[10]

The Court should strike Plaintiffs' requests for restitution.

**V.   CONCLUSION**

Unwilling to own up to their own business failures, Plaintiffs seek to use baseless false advertising assertions to poach Uber's profits. Settled law prohibits what Plaintiffs seek, and this Court should accordingly grant Uber's Motion.

---

[10] Plaintiffs also cite *MGA Entm't, Inc. v. Mattel, Inc.*, No. CV05-2727NM(RNBX), 2005 WL 5894689 (C.D. Cal. Aug. 26, 2005). In that case, however, the plaintiff accused defendant of a variety of unfair competition claims that could implicate vested interests, including "intellectual property infringement," "tampering with [product] displays," "intimidate[ing] and threaten[ing]" plaintiff's current employees, and threatening plaintiff's licensees. *Id.* at *1, *2, *2 n.3, *10. These allegations go well beyond the assertion that defendant has lured potential customers, as Plaintiffs allege here.

1 | Dated:  June 25, 2015

IRELL & MANELLA LLP
Andra Barmash Greene
A. Matthew Ashley


By:   /s/ A. Matthew Ashley
          A. Matthew Ashley

3442168                                    DEFS' REPLY ISO OF MOTION TO DISMISS

## ECF ATTESTATION

I, Michael Harbour, am the ECF user whose ID and password are being used to file **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**.  I hereby attest that I received authorization to insert the signatures indicated by a conformed signature (/s/) within this e-filed document.

By:    /s/  Michael Harbour

Michael Harbour

3442168

DEFS' REPLY ISO OF MOTION TO DISMISS