IRELL & MANELLA LLP
Andra Barmash Greene (123931)
agreene@irell.com
A. Matthew Ashley (198235)
mashley@irell.com
840 Newport Center Drive, Suite 400
Newport Beach, California 92660-6324
Telephone:    (949) 760-0991
Facsimile:    (949) 760-5200

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| L.A. Taxi Cooperative, Inc. dba Yellow Cab Co.; Administrative Services SD, LLC dba Yellow Radio Service; All Yellow Taxi, Inc. dba Metro Cab; American Cab, LLC; American Cab, LLC dba Pomona Valley Yellow Cab; Bell Cab Company, Inc.; Big Dog City Corporation dba Citywide Dispatch, Citywide Taxi, and Big Dog Cab; Cabco Yellow, Inc. dba California Yellow Cab; C&J Leasing, Inc. dba Royal Taxi; G&S Transit Management, Inc.; Gorgee Enterprises, Inc.; LA City Cab, LLC; Long Beach Yellow Cab Co-operative, Inc.; Network Paratransit Systems, Inc.; South Bay Co-operative, Inc. dba United Checker Cab; Taxi Leasing, Inc. dba Yellow Cab of Ventura County; Tri-City Transportation Systems, Inc.; Tri Counties Transit Corporation dba Blue Dolphin Cab of Santa Barbara, Yellow Cab of Santa Maria, and Yellow Cab of San Luis Obispo; and Yellow Cab of South Bay Co-operative, Inc. dba South Bay Yellow Cab, <br><br> *Plaintiffs*, <br><br> vs. <br><br> Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC, <br><br> *Defendants*. | Case No. 3:15-cv-01257-JST <br><br> **DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS** |

1    **I.    *Heartland Payment* Does Not Support Plaintiffs' Argument that After-Purchase**
2          **Statements Are Actionable.**

3          At oral argument, Plaintiffs for the first time cited *Heartland Payment Systems., Inc. v.*
4    *Mercury Payment Systems, LLC* for the proposition that Uber's receipts listing the "Safe Rides
5    Fee" qualify as advertisements under the Lanham Act even though these statements were made to
6    consumers after they had already used Uber. No. C 14-0437 CW, 2014 WL 5812294, at *6 (N.D.
7    Cal. Nov. 7, 2014). *Heartland Payment*, however, does not help Plaintiffs because its conclusion
8    is both dictum and contrary to Ninth Circuit authority. Further, even if after-purchase statements
9    could be actionable under some circumstances (they are not), Plaintiffs here have failed to explain
10   how Uber's line-item "Safe Rides Fee" charge is false or misleading. The Court should
11   accordingly dismiss Plaintiffs' Lanham Act claims to the extent they are predicated on Uber's
12   after-purchase statements on receipts regarding the Safe Rides Fee.

13   **II.    The Court should reject the dictum in *Heartland Payment* because it is inconsistent**
14          **with Ninth Circuit and other federal authority.**

15         As Uber argued in its Motion to Dismiss, statements that Uber makes on electronic receipts
16   explaining the itemized "Safe Rides Fee" do not qualify as commercial speech under the Lanham
17   Act. Mot. at 10. It is well established that "commercial speech is 'speech which does no more
18   than propose a commercial transaction." *Rice v. Fox Broadcasting*, *Co*., 330 F.3d 1170, 1181 (9th
19   Cir. 2003). The purpose of the itemized "Safe Rides Fee" on the receipt, however, is not to
20   "propose a commercial transaction," but to explain a transaction that has already occurred. *See id.*
21   (statements made during a television program did not constitute an advertisement for that
22   program). Accordingly, District courts both within the Ninth Circuit and elsewhere have
23   repeatedly held that after-purchase statements made to consumers – including on receipts – are not
24   actionable under the Lanham Act. *See Gonzalez v. Allstate Ins. Co.*, No. CV 04-
25   1548FMC(PJWX), 2005 WL 5891935, at *8 (C.D. Cal. Aug. 2, 2005) (statements that "relate to
26   commercial transactions that have already occurred . . . are not commercial speech"); *see also*
27   *Midwest Canvas Corp. v. Commonwealth Canvas, Inc.*, No. 07 C 0085, 2008 WL 162757, at *3
28

- 1 -

3455094

1   (N.D. Ill. Jan. 16, 2008) ("[A]n invoice cannot be advertising because it is not an inducement to

2   buy, but rather reflects an agreed-upon transaction.").

3       This is true even when customers are potential repeat purchasers, which is almost always

4   the case with any commercial transaction.[1]  For example, in *Gillette v. Norelco Consumer*

5   *Products*,  the court held that a package insert touting a shaving razor's ability to provide a

6   "closer, much more comfortable shave" was not advertising because it did "not affect the choice to

7   purchase, that choice having been made at an earlier point."  946 F. Supp. 115, 135 (D. Mass.

8   1996).  Likewise, in *Midwest Canvas*, the court held that an invoice describing recently shipped

9   construction materials was not advertising because the goods "[had] already been ordered by the

10  consumer who need[ed] no further inducement to buy them."  2008 WL 162757 at *4.

11      At oral argument, Plaintiffs asked the Court to ignore the above authority on the basis of a

12  single Northern District decision, *Heartland Payment Sys., Inc. v. Mercury Payment Sys. LLC*, No.

13  C 14-0437 CW, 2014 WL 5812294 (N.D. Cal. Nov. 7, 2014).  The Court should decline to do so.

14  Notably, Plaintiffs failed to point out that the court in *Heartland Payment* dismissed the Lanham

15  Act claims at issue in their entirety.  *Id.* at *6.  Accordingly, the court's statement that after-

16  purchase representations were actionable was merely dictum.  Further, the court offered no

17  reasons or basis for this proposition, which is contrary to Ninth Circuit authority.  *See Rice*, 330

18  F.3d at 1181 (commercial speech must propose a commercial transaction).

19      In *Heartland Payment*, the plaintiff alleged that an electronic payment processor had failed

20  to properly disclose a fee listed on its monthly billing statements.  *Id.* at *2.  The court stated,

21  without any analysis, that "the monthly statements could induce merchants to continue using

22  Mercury's services, and hence could be considered commercial speech designed to propose a

23  continued business relationship."  *Id.* at *6.  Notably, these monthly billing statements are distinct

24  from receipts in that they do not necessarily mark the end of the transaction as a receipt does.

---

25

26  [1] This includes the insurance policies at issue in *Gonzalez v. Allstate Ins. Co.*, since
    insurance policies are often subject to renewal.  *See* 2005 WL 5891935 at *8.  Indeed, this is why
27  the court in *Gonzalez* concluded that renewal notices specifically were actionable – because they
    proposed a future transaction.  *Id.*  Other notices regarding the terms of the insurance policies,
28  however, were not actionable because they only concerned a transaction that had already occurred.
    *Id.*

3455094

Regardless, the court's statement was merely dictum. As the court went on to conclude, even if these statements were commercial speech, dismissal was warranted because plaintiff had failed to plead falsity with sufficient particularity under Rule 9(b). *Id.* Accordingly, it was not necessary for the court to address the commercial speech question.

Further, not only is the court's conclusion mere dictum, it is also unpersuasive. Though the court quoted the correct standard – "commercial speech is 'speech which does no more than propose a commercial transaction'" – it failed to apply this standard accurately. *Id.* at *5 (quoting *Rice*, 330 F.3d at 1181). The court seemed to suggest that, because defendant's "monthly billing statements *could* induce merchants to continue using [defendant's] services," they constituted commercial speech. *Id.* at *6 (emphasis added). However, the mere possibility that a statement could affect consumer purchasing decisions does not give rise to a Lanham Act claim. Crucially, the statement must be made "*for the purpose* of influencing consumers to buy defendant's goods or services." *Rice,* 330 F.3d at 1181 (emphasis added); *see also Cornelius v. DeLuca*, 709 F. Supp. 2d 1003, 1019 (D. Idaho 2010) (statement not actionable as a matter of law where "the purpose of the statement was not to influence consumers to purchase [defendant's] products"); *Avery Dennison Corp. v. Acco Brands, Inc.*, No. CV99-1877DT(MCX), 2000 WL 986995, at *8 (C.D. Cal. Feb. 22, 2000) (same). Accordingly, statements that "may have an incidental effect of promoting goods to customers are not within the reach of the Lanham Act." *Sigma Dynamics, Inc. v. E. Piphany, Inc.*, No. C 04-0569 MJJ, 2004 WL 2648370, at *3 (N.D. Cal. June 25, 2004).

Here, Uber's listing of the Safe Rides Fee on the receipt was made for the purpose of explaining to consumers why a charge appears on their receipts, not for the purpose of proposing a *future* transaction. At the very least, they do "more than propose a commercial transaction." *See Rice*, 330 F.3d at 1181. As numerous courts have held, such after-purchase statements are not commercial speech. The Court should reject Plaintiffs' invitation to follow one case's contrary dictum.

1
2

**III.     Plaintiffs have failed to explain how Uber's itemized Safe Rides Fee is false or misleading.**

3       Even if, however, the Court concludes that after-purchase statements could be actionable in
4   some cases, this is not one of them.  Apart from the problem addressed above, Plaintiffs have
5   failed to sufficiently allege how Uber's line-item listing a Safe Rides Fee constitutes false or
6   misleading advertising.  Specifically, Plaintiffs offer no basis for their assertion that any time a
7   company separately itemizes a charge on a receipt, it is implicitly disparaging its competitors.
8   Complaint ¶ 52.  For instance, the fact that some restaurants include a gratuity as part of
9   customers' bills does not imply that all other restaurants have poor service.  Plaintiffs'
10  "unreasonable inferences" thus cannot support a cause of action.  *See Katiki v. Taser Int'l, Inc.*,
11  No. 12-CV-05519 NC, 2013 WL 163668, at *2 (N.D. Cal. Jan. 15, 2013).  Accordingly, Plaintiffs'
12  complaint should be dismissed to the extent that it relies on the itemized Safe Rides Fee.

13
14  Dated:  July 13, 2015

IRELL & MANELLA LLP
Andra Barmash Greene
A. Matthew Ashley

15
16
17                                                      By: /s/ A. Matthew Ashely
                                                            A. Matthew Ashley
18
19                                                      Attorney for Uber Technologies, Inc.; Rasier, LLC; and Rasier-CA, LLC

20
21
22
23
24
25
26
27
28

- 4 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>ECF ATTESTATION</u>**

I, Michael Harbour, am the ECF user whose ID and password are being used to file **DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS**. I hereby attest that I received authorization to insert the signatures indicated by a conformed signature (/s/) within this e-filed document.

By:     /s/  Michael Harbour

Michael Harbour