**VIA CM/ECF**

June 7, 2016

The Honorable Donna M. Ryu
Northern District of California
Oakland Courthouse, Courtroom 4 - 3rd Floor
1301 Clay Street
Oakland, CA 94612

      Re:  *L.A. Taxi Coop., Inc. et al. v. Uber Tech., Inc. et al.*, No. 3:15-cv-01257-JST

Dear Judge Ryu:

      This letter brief concerns a dispute over discovery into Plaintiffs' allegation that they "offer a safer transportation experience than UberX." *See* First Amended Complaint ("FAC"; Dkt. 50) ¶ 69.  The requests at issue are Defendants' Request For Production ("RFP") numbers 1-4 and 7-8.  The parties met and conferred telephonically on May 31, 2016 but did not reach a resolution.

      Relevant case management deadlines are as follows:  Fact and expert discovery close on November 11, 2016, and February 10, 2017, respectively.  Dispositive motions are due April 27, 2017, and the hearing on dispositive motions is on June 8, 2017.  A pretrial conference is scheduled for July 7, 2017, and trial is scheduled to begin July 24, 2017.

I.      DEFENDANTS' POSITION

      The FAC alleges that Plaintiffs "offer a safer transportation experience than UberX in a variety of different ways," including background checks (FAC ¶¶ 70-83), driver safety training (FAC ¶¶ 84-87), written examinations (FAC ¶¶ 88-91), and vehicle inspections and maintenance standards (FAC ¶¶ 92-95).  There are twenty separate Plaintiffs in this case, but the FAC fails to differentiate between them and never identifies what supposedly makes *each Plaintiffs'* safety practices superior to Uber's.  However, it is clear from the FAC that Plaintiffs' individual practices with respect to these safety topics differ.  For example, on vehicle inspections the FAC states that "taxi cabs belonging to one of the Plaintiffs are put up on a lift and raised," and "the fleet of taxi cabs of at least one of the Plaintiffs is inspected by the police department itself."  *See* FAC ¶ 94.  But these allegations do not specify if one or twenty of the Plaintiffs allegedly have their taxi cabs put on a lift and/or inspected by the police department.

      Defendants sought to unravel Plaintiffs' group allegations by serving RFPs relating to Plaintiffs' vehicle inspections (RFP 1), maintenance standards (RFP 2), maintenance records (RFP 3), background checks (RFP 4), driver examinations (RFP 7), and driver training (RFP 8).[1]  Some Plaintiffs produced responsive documents, but many did not.  For

---

[1] The parties have agreed that requests for production will not, as a general matter, be construed to require the production of documents related to individual drivers or individual vehicles.  If an RFP could be construed as requesting individual driver or vehicle

The Honorable Donna M. Ryu
June 7, 2016
Page 2

example, at least seven Plaintiffs have produced no vehicle inspection forms; seven have produced no maintenance standards; eighteen have produced no maintenance records; eleven have produced no driver examinations; six have produced no driver training documents; and fifteen have produced no criteria used to evaluate driver applicants.

Because of these gaps in production, Defendants asked Plaintiffs to confirm in writing that, where one or more Plaintiff(s) produced documents for a category (e.g. vehicle inspection forms) but other Plaintiffs did not, this meant that the non-producing Plaintiffs had no responsive documents with respect to the category. Plaintiffs responded that this was "generally true," but asked Defendants to provide a comprehensive list of responsive documents that had been produced by Plaintiffs so that Plaintiffs could give the requested written confirmation. Though Plaintiffs' counsel's request that Defendants organize and present Plaintiffs' own production was quite unusual, and though it cost Defendants no small amount of time or money to do so, Defendants nonetheless compiled Plaintiffs' requested list and sent it to them seeking the confirmation Plaintiffs promised. Plaintiffs refused, without explanation and without claiming Defendants' list was inaccurate.

Consequently, as it stands now, Defendants have no idea if Plaintiffs generally, and each Plaintiff specifically, have each produced – as required under the Federal Rules – all documents responsive to Defendants' requests. Non-producing Plaintiffs either have documents responsive to the requests or they do not. Creative ambiguity is not a viable response under the Federal Rules. *See* Fed. R. Civ. P. 34(b)(2)(B).

Defendants respectfully request the Court to compel: (i) a complete production of documents by each Plaintiff by a date certain; and (ii) the written confirmation that Plaintiffs agreed to provide Defendants verifying that, if a particular Plaintiff has produced no documents on a safety topic raised by the FAC (e.g. vehicle inspections, driver training, driver examinations), then that Plaintiff has no responsive documents on that topic.

II.     PLAINTIFFS' POSITION:

A request for production must be within the scope of Rule 26(b). In particular, a party is only required to produce documents in the "possession, custody, or control" of the party. Fed.R.Civ.Pro.34. Plaintiffs have produced documents in their possession, custody, or control relating to vehicle inspections (RFP 1), maintenance standards (RFP 2), maintenance records (RFP 3), background checks (RFP 4), driver examinations (RFP 7), and driver training (RFP 8). Defendants point to "gaps in production" for RFPs 1-3 and 7-8 because not all Plaintiffs have produced documents for each RFP. However, to date, Plaintiffs have identified and produced responsive documents that they, through reasonable efforts, have identified. Although each Plaintiff has produced all documents they have identified that are responsive to RFPs 1-4 and 7-8, their investigation and efforts to identify

---

documents, it shall instead be construed as requesting representative examples of the requested document(s) over the relevant time period.

The Honorable Donna M. Ryu
June 7, 2016
Page 3

any additional responsive documents are ongoing.  Plaintiffs will supplement their responses when and if additional responsive documents are identified.  Defendants demand that this Court establish a date certain by which each Plaintiff certifies that it has produced all responsive documents.  This is unnecessary as the District Court has previously set a discovery schedule—with a fact discovery cut-off of November 11, 2016 and an expert discovery cut-off of February 10, 2017—and Plaintiffs are working diligently to identify any additional documents that may be responsive to RFPs 1-4 and 7-8.  Should the Court consider Defendants' demand, Plaintiffs believe they will produce all responsive documents to RFPs 1-4 and 7-8 on or before July 29, 2016.

In the parties' last meet and confer on May 31, 2016, the status of Defendants' production of documents was also discussed.  What was clear from that discussion is that in spite of Plaintiffs advising Defendants a number of weeks previously that they agreed to certain geographical limits on the scope of the document searches by Defendants, Defendants had produced no documents responsive to a number of Plaintiffs' RFPs.  To the extent the Court considers imposing a unilateral deadline on Plaintiffs for the completion of their document productions, Plaintiffs intend to make a similar motion, after complying with any meet and confer requirements, compelling Defendants to complete their document production by a date certain.

Further, Plaintiffs have objected to several of Defendants' RFPs as vague and ambiguous.  Defendants must clarify certain terms or rephrase the request with more particularity.  Only then will Plaintiffs be able to identify additional documents responsive to these requests.

First, with regard to the term "inspection(s)," RFP 1 does not state with particularity if these inspections relate to safety.  Inspections could relate to a number of things—the functionality of the vehicle, superficial damages on the exterior, cleanliness, etc.  Second, the term "maintenance standards" as it relates to Plaintiffs' taxicabs in RFP 2 could refer to any aspect of the vehicle—even those that do not in any way affect safety.  For example, damage to the interior upholstery of the vehicle could relate to maintenance standards of a taxicab, but this fabric damage would not in any way affect the safety of the vehicle.  Similarly to RFP 2, the phrase "maintenance records" as it relates to Plaintiff's taxicabs in RFP 3 could relate to aspects of the vehicle not involving safety.  Finally, "criteria used to evaluate YOUR driver applicants" in RFP 4 does not define what types of criteria they are looking for other than background checks.

In sum, Plaintiffs' efforts to identify documents responsive to RFPs 1-4 and 7-8 is ongoing.  Plaintiffs will supplement their responses when and if responsive documents become available, and anticipate that all responsive documents will be produced by July 29, 2016.  Additionally, in order for Plaintiffs to adequately identify documents responsive to RFPs 1-4, Defendants must clarify the above identified terms.

The Honorable Donna M. Ryu
June 7, 2016
Page 4

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| */s/ A. Matthew Ashley* | */s/ George S. Trevor* |
| A. Matthew Ashley | George S. Trevor |
| Counsel for Defendants | Counsel for Plaintiffs |

869966.1

- 4 -

The Honorable Donna M. Ryu
June 7, 2016
Page 5

## ECF ATTESTATION

    I, Nathaniel Lipanovich, am the ECF user whose ID and password are being used to file this Joint Letter Brief. I hereby attest that I received authorization to insert the signatures indicated by a conformed signature (/s/) within this e-filed document.

                                                     By: */s/ Nathaniel Lipanovich*
                                                            Nathaniel Lipanovich