<u>**VIA CM/ECF**</u>

November 7, 2016

The Honorable Donna M. Ryu
Northern District of California
Oakland Courthouse, Courtroom 4 – 3rd Floor
1301 Clay Street
Oakland, CA 94612

      Re:  *L.A. Taxi Coop., Inc. et al. v. Uber Tech., Inc. et al.*, No. 3:15-cv-01257-JST

Dear Judge Ryu:

      This letter brief concerns a dispute over Defendants' production of internal Uber emails and other documents from the years 2015 and 2016 that Plaintiffs' allege are responsive to Plaintiffs' Requests for Production ("RFP"). The parties met and conferred in good faith by telephone on October 29, 2016, but were unable to resolve this dispute. Plaintiffs hereby move to compel further production of documents responsive to Plaintiffs' RFP Nos. 5, 6, 8, 9, 12, and 15-19. Those requests and Defendants' responses thereto are attached to this letter.

      The following are relevant case management deadlines: Fact discovery ends on November 11, 2016; expert discovery ends on February 10, 2017; dispositive motions are due on April 27, 2017; the hearing on these dispositive motions is scheduled for June 8, 2017; a pretrial conference is scheduled for July 7, 2017; and the trial is scheduled for July 24, 2017.

I.    <u>PLAINTIFFS' POSITION</u>

      Defendants have not produced internal emails and other documents written in 2015 and 2016 that are relevant to safety issues at the heart of this case. See First Amended Complaint ("FAC"; Dkt. 50) ¶¶ 41-99. These documents must be produced pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. A search of Defendants' produced documents found an extremely small number—approximately 2—of internal Uber emails from 2015. A search of produced documents from 2016 uncovered approximately 75 internal Uber emails, all but a few of which related to a 2016 Buzzfeed article on Uber "rape" and "sexual assault" tickets that Plaintiffs requested in Set 3 of their Requests for Production.

      The utter lack of responsive internal emails from 2015 forward became apparent during the depositions of Eva Behrend (October 20, 2016) and Lane Kasselman (October 26, 2016). Ms. Behrend is currently employed by Uber, and has been since the Spring of 2014. (Behrend Depo Rough; Pg. 7, Ln. 4-10).[1] Ms. Behrend testified that between December 2014 and the end

---

      [1] If the Court wishes to review the cited testimony of Ms. Behrend and Mr. Kasselman, Plaintiffs will submit the relevant portions of transcript. However, since Defendants designated those entire transcripts as "Highly Confidential—Attorneys' Eyes Only," they must be submitted under seal pursuant to the Protective Order.

of 2015, her job responsibilities remained the same as Communications Director for the Western Region of the United States. (Behrend Depo Rough; Pg. 150, Ln. 12-15). Further, Ms. Behrend indicated that after the regional scope of her job shifted solely to California at the end of 2015, the nature of her responsibilities, her practices of sending emails, and the quantity of emails she sent or received did not substantially change. (Behrend Depo Rough; Pg. 150, Ln. 15 through Pg. 151, Ln. 15). Ms. Behrend acknowledged that a portion of her business responding to media inquiries is done through email, and that after December 2014, she continued to respond to press inquiries relating to Uber background checks. (Behrend Depo Rough; Pg. 151, Ln. 12 through Pg. 153, Ln. 4). Defendants produced virtually no emails from 2015 forward to which Ms. Behrend is a party. This is in sharp contrast to numerous internal emails written by or to Ms. Behrend in 2014 that were produced.

Lane Kasselman has served as Head of Communications for the Americas and then Head of Communication of North America from February 2014 through Spring 2015. (Kasselman Depo Rough; Pg. 142, Ln. 7-11). He testified that he left Uber on October 1, 2015. (Kasselman Depo Rough; Pg. 10, Ln. 22-25). Notably, Mr. Kassleman testified that while at Uber he often communicated by email on a myriad of issues—including safety issues—receiving on average 300 to 500 emails a day. (Kasselman Depo Rough; Pg. 260, Ln. 10-24). The sheer number of emails he received relating to media inquiries and the fact that his communications responsibilities included safety issues indicate that email correspondence to and from Mr. Kassleman relating to background checks and safety through October 1, 2015 must exist. As with Ms. Behrend, Defendants produced numerous internal emails sent to or from Mr. Kasselman from December 2014 and earlier. However, Defendants produced no documents or internal emails from 2015 forward.[2]

Plaintiffs' RFPs clearly request documents relating to current and ongoing Uber practices, not just practices from 2014 and earlier—the year from which the vast majority of Uber internal emails were produced. RFP 5 requests documents about Defendants' decision not to require fingerprinting in their screening of drivers; RFP 6 requests Uber's communications with any company that performs background checks, RFPs 8 and 9 request documents that indicate the amount of money Uber spent on, or allocated to, background checks; RFP 10 requests documents that evidence modification of representations about safety on Uber-operated websites; RFP 12 requests documents reflecting how Defendants spend the Safe Rides Fee; RFPs 15, 16, and 17 request documents about safety training required by or provided by Defendants or third parties to potential UberX drivers; RFP 18 requests documents relating to any examination potential UberX drivers are required to complete; and RFP 19 requests the vehicle inspection form potential UberX drivers must submit to Defendants. Each of these RFPs relates to some ongoing aspect of Defendants' business—background checks, safety representations, Safe Rides

---

[2] On October 31, 2016, Plaintiffs took the deposition of William Barnes, the head of Uber's Los Angeles's operations from 2012 through Spring 2014. At least by July 2014, Barnes was head of operations for Uber's entire Western U.S. Region, a position he currently holds. As with Ms. Behrend and Mr. Kasselman, Uber produced no emails or documents written by or to Mr. Barnes in 2015 or later. Searches done of other important Uber witnesses set for deposition in the next 10 days show the same lack of documents from 2015 and 2016.

Fee (now Booking Fee) revenue, driver training, and vehicle inspections—all of which are relevant to Plaintiffs' allegations and discoverable.  There is no question internal emails exist from 2015 and 2016, as shown by the numerous emails from 2014 that were produced relating to these issues.

Plaintiffs respectfully request the Court to compel all documents, including internal emails, from 2015 and forward relating to safety issues at the heart of Plaintiffs' claims in this case, as requested in RFP Nos. 5, 6, 8, 9, 10, 12, and 15-19.

## II.   DEFENDANTS' POSITION

Plaintiffs' motion improperly seeks discovery that Plaintiffs never propounded, which is why Plaintiffs devote just one paragraph near the end of their motion to the actual Requests for Production ("RFP") at issue.  However, any fair reading of the RFPs demonstrates that Defendants' production was proper and that Plaintiffs' arguments are meritless.  This combined with the dilatory nature of Plaintiffs' request compels denial of Plaintiffs' motion.

Plaintiffs' motion repeatedly proclaims that emails "relevant to safety issues" have not been produced.  But there was never any RFP seeking all documents "relevant to safety issues," and if any such RFP had been propounded, it would have been grossly overbroad.  "Safety" is an amorphous concept encompassing scores of subjects, as demonstrated by Plaintiffs' own discovery responses, which include within the concept of "safety" such items as driver sensitivity training, English language proficiency, computer training, and how to use a dispatch system.[3] Indeed, in their own written discovery responses, Plaintiffs objected that the phrase "passenger and driver safety" is "vague and ambiguous due to the fact that the [discovery request] does not define what passenger safety and driver safety means."  Plaintiffs also objected that Defendants' discovery requests for materials relating to topics such as safety training and driver examinations were "overly broad and unduly burdensome" as well as not relevant to the claims and defenses in the case and then unilaterally limited their production.  Consequently, this motion is not about documents "relevant to safety issues"; it is about the actual Requests at issue – RFPs 5-6, 8-10, 12, and 15-19 – and what those requests can properly be construed to legitimately seek.

**RFP 5**.  RFP 5 seeks documents regarding "Your decision to not require UberX drivers to undergo fingerprinting as a prerequisite to driving for UberX."  As Plaintiffs know, Uber had made its "decision to not require UberX drivers to undergo fingerprinting" by at least early 2014.  And scores of documents produced prior to and as part of that decision have been produced and testified to at length by current and former Uber employees.  There is no reason to expect any material responsive to RFP 5 in 2015, given that the "decision" was made long before then.

**RFP 6**.  RFP 6 seeks "Your Communications with any company that performs background checks . . . pertaining to background checking services . . . ."  Given that

---

[3] 'Plaintiffs also listed safety-related items as diverse as "live scan" background checks, "training on route navigation," "disability training," "defensive driving instruction," going to "monthly meetings," receipt of a geographic "reference guide," drug testing, vehicles inspections, and not driving for multiple companies at the same time, among many others".."

Defendants' background check companies have performed millions of background checks in fifty states and 77 countries, Defendants objected to the request as being, among other things, overbroad and unduly burdensome.  Defendants then agreed to produce all contracts or agreements between Defendants and their background check companies in any city where Plaintiffs operate – and Defendants have done this.  Defendants also secured the agreement of Plaintiffs that all RFPs (on all subjects) would be construed so as <u>not</u> to seek driver specific documents.  Defendants served their response to RFP 6 on November 4, 2015, and Plaintiffs have never raised an issue with it or with the scope of Defendants' production until Plaintiffs provided their portion of this joint letter to Defendants nearly one year later on November 2, 2016.  Even in their portion of this letter brief, Plaintiffs still never articulate precisely what they contend is supposedly deficient in Defendants' response.[4]

*RFPs 8-9 and 12*.  These requests seek documents reflecting or evidencing the "amount of money that You have spent in connection with [or allocated to] background checks" and "how You spend the 'Safe Rides Fees' that You collect."  Plaintiffs' contention that information post-2014 has not been provided on these topics is wrong.  Defendants have produced the expenditures for background checks, vehicle inspections, insurance, development of safety features for the App, and mobile communication, for every single month in which the Safe Rides Fee was in place, which encompasses the time period April 2014 to February 2016.

*RFP 10*.  Defendants have produced documents showing changes to the statements that are challenged in the First Amended Complaint, including changes that occurred in 2015 and 2016.  *See In re Century 21-RE/MAX Real Estate Advert. Claims Litig.*, 882 F. Supp. 915, 927 (C.D. Cal. 1994) (statements not included in the complaint are not properly before the Court).  Prior to this joint letter, Plaintiffs did not express any concern about Defendants' production in response to this RFP.

*RFPs 15-18*.  These requests seek documents reflecting or evidencing: (i) "safety training that You provide to potential UberX drivers"; (ii) "safety training that You require potential UberX drivers to undergo as a prerequisite to driving for UberX"; (iii) "partner training classes offered in California by 7X7 Executive Transportation, including but not limited to course materials for such classes"; and (iv) "any examination that potential UberX drivers are required to complete as a prerequisite to driving for Uber."  Despite Plaintiffs' naked assertions to the contrary, Defendants in fact have produced all safety training and examination material that they provide to potential UberX driver-partners or that they require Uber X driver-partners to undergo, all of which includes materials in 2015 and 2016.  The RFPs call for nothing more, and if they did, they would be overbroad, unduly burdensome and disproportionate to the needs of the case.

---

[4] Plaintiffs' reliance on the absence of such documents from Ms. Behrend and Mr. Kasselman post-2015 as the basis for this letter brief is particularly ill-considered.  As part of Uber's Communications department it would be surprising indeed if these individuals had any communications with background check providers (RFP 5), or had documents related to financial allocations (RFP 8, 9 & 12), driver-partner safety trainings (RFPs 15-18), or vehicle inspections (RFP 19).

**RFP 19**.  This request seeks documents reflecting or evidencing "the vehicle inspection form that potential UberX driver-partners must submit to You as a prerequisite to driving for UberX."  Defendants have produced the vehicle inspection form used in California, and as noted above, the parties have agreed that no RFPs are interpreted to seek driver-specific information (which would needlessly require production of tens of thousands of inspection forms).

As demonstrated above, there is good reason why Plaintiffs only pay lip service to their own RFPs.  If properly construed, the RFPs do not legitimately seek any material that has not already been produced by Defendants.  It also bears noting that, while Plaintiffs nebulously allude to "safety issues at the heart of Plaintiffs' claims," this case is about allegedly false *advertising*, not "safety" in a vacuum.

Moreover, while Plaintiffs now feign surprise at Defendants' discovery responses and production, the responses to the RFPs at issue were served on November 4, 2015 – *over a year ago* – and Defendants' email production was, as agreed by the parties, completed prior to the deposition of Defendant's 30(b)(6) witness on September 12, 2016 (almost two months ago).  While Plaintiffs stood silent on the arguments they are only now making, nineteen depositions were taken, and fact discovery closes in five days.  Consequently, Plaintiffs' motion is not only meritless, it is hopelessly tardy.  *See Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. CV058444DDPPLAX, 2012 WL 12875772, at *6 (C.D. Cal. Aug. 29, 2012) (denying motion to compel where Plaintiff waited until "the last month of fact discovery . . . especially considering that one of the requests for production of documents was propounded . . . more than a year before the [] Motion was filed").

Plaintiffs' motion is tardy, meritless and ignores Plaintiffs' own discovery requests.  It should be denied.

Respectfully submitted,

 */s/ A. Matthew Ashley*
A. Mathew Ashley
Counsel for Defendants

Respectfully submitted,

*/s/  George S. Trevor*
George S. Trevor
Counsel for Plaintiffs

*L.A. Taxi Coop., Inc. et al. v. Uber Tech., Inc. et al.*
**Case No. 3:15-cv-01257-JST**
**Exhibit to Joint Discovery Letter**

## PLAINTIFFS' REQUEST FOR PRODUCTION NO. 5

All Documents reflecting, relating to, or evidencing Your decision to not require potential UberX drivers to undergo fingerprinting as a prerequisite to driving for UberX.

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 5

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 5's use of the term "UberX driver" because it erroneously characterizes an association among the persons and entities described. Defendants object to REQUEST NO. 5 on the ground that it seeks documents and information that are not relevant to Plaintiffs' claims. Defendants object to REQUEST NO. 5 as overbroad, unduly burdensome and oppressive. Defendants object to REQUEST NO. 5 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection. Defendants also object to Request No. 5 on the basis that it improperly assumes that fingerprinting should be a prerequisite.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis non-privileged documents reflecting the requirements Uber Partners must meet before using the Uber software application to receive transportation requests.

## PLAINTIFFS' REQUEST FOR PRODUCTION NO. 6

All Documents reflecting, relating to, or evidencing Your Communications with Any company that performs background checks (including, but not limited to, Hirease, Inc., Accurate Background, Inc., or Checkr, Inc.) pertaining to background checking services performed by such

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 6

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 6 as overbroad, unduly burdensome and oppressive in that it seeks all documents "reflecting, relating to, or evidencing" Communications regarding the referenced subject matter. Defendants also object that REQUEST NO. 6 is overbroad and unduly burdensome because it is not limited to Communications relating to the cities in which Plaintiffs operate. Defendants object to REQUEST NO. 6 on the ground that it seeks documents and information that are not relevant to Plaintiffs' claims. Defendants object to REQUEST NO. 6 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis contracts or agreements between Defendants and any company that performs background checks in a city in which Plaintiffs operate.

## PLAINTIFFS' REQUEST FOR PRODUCTION NO. 8

All Documents reflecting, relating to, or evidencing the amount of money that You have spent in connection with background checks for potential or current UberX drivers (including, but not limited to, those performed by Hirease, Inc., Accurate Background, Inc., or Checkr, Inc.).

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 8

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 8's use the term "UberX driver" because it erroneously characterizes an association among the persons and entities described. Defendants object to REQUEST NO. 8 on the ground that the phrase "in connection with" is vague and ambiguous. Defendants object to REQUEST NO. 8 on the ground that it seeks documents and information that are not relevant to Plaintiffs' claims. Defendants object to REQUEST NO. 8 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis non-privileged documents sufficient to show the amount of money that Defendants have spent in connection with background checks for Uber Partners for the cities in which Plaintiffs operate.

## PLAINTIFFS' REQUEST FOR PRODUCTION NO. 9

All Documents reflecting, relating to, or evidencing the amount of money that You have allocated to background checks for potential or current UberX drivers (including, but not limited to, those performed by Hirease, Inc., Accurate Background, Inc., or Checkr, Inc.).

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 9

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 9's use the term "UberX driver" because it erroneously characterizes an association among the persons and entities described. Defendants object to REQUEST NO. 9 as overbroad and unduly burdensome because it is not limited to the cities in which Plaintiffs operate. Defendants object to REQUEST NO. 9 on the ground that the word "allocated" is vague and ambiguous. Defendants object to REQUEST NO. 9 on the ground that it seeks documents and information that are not relevant to Plaintiffs' claims. Defendants object to REQUEST NO. 9 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis non-privileged documents sufficient to show the amount of money

Defendants spends in connection with background checks for Uber Partners for the cities in which Plaintiffs operate.

## PLAINTIFFS' REQUEST FOR PRODUCTION NO. 12

All Documents reflecting, relating to, or evidencing how You spend the "Safe Rides Fees" that You collect.

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 12

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 12 as overbroad, unduly burdensome and oppressive in that it seeks all documents "reflecting, relating to, or evidencing" the referenced subject matter. Defendants object that REQUEST NO. 12 is overbroad and unduly burdensome because it is not limited to the cities in which Plaintiffs operate. Defendants object to REQUEST NO. 12 on the ground that it seeks documents and information that are not relevant to Plaintiffs' claims. Defendants object to REQUEST NO. 12 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis non-privileged documents sufficient to show how Defendants spend money collected in connection with the Safe Rides Fee, in the cities in which Plaintiffs operate.

## PLAINTIFFS' REQUEST FOR PRODUCTION NO. 15

All Documents reflecting, relating to, or evidencing Any safety training that You provide to potential UberX drivers.

## DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 15

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 15's use the term "UberX driver" because it erroneously characterizes an association among the persons and entities described. Defendants object that REQUEST NO. 15 is also overbroad and unduly burdensome because it is not limited to safety training related to the cities in which Plaintiffs operate. Defendants object to REQUEST NO. 15 on the ground that the phrase "safety training" is vague and ambiguous. Defendants object to REQUEST NO. 15 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis any non-privileged documents that are responsive to REQUEST NO. 15 to the extent that they relate to the cities in which Plaintiffs operate.

## PLAINTIFFS' REQUEST FOR PRODUCTION NO. 16

All Documents reflecting, relating to, or evidencing Any safety training that You require potential UberX drivers to undergo as a prerequisite to driving for UberX.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 16's use the term "UberX driver" because it erroneously characterizes an association among the persons and entities described. Defendants also object that REQUEST NO. 16 is also overbroad and unduly burdensome because it is not limited to training related to cities in which Plaintiffs operate. Defendants object to REQUEST NO. 16 on the ground that the phrase "safety training" is vague and ambiguous. Defendants object to REQUEST NO. 16 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis any non-privileged documents that are responsive to REQUEST NO. 16 to the extent that they relate to cities in which Plaintiffs operate.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 17**

All Documents reflecting, relating to, or evidencing Uber partner training classes offered in California by 7 X 7 Executive Transportation, including, but not limited to, Any course materials for such classes.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 17**

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 17 because it calls for documents not in the possession, custody or control of Defendants. Defendants object to REQUEST NO. 17 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 18**

All Documents reflecting, relating to, or evidencing Any examination that potential UberX drivers are required to complete as a prerequisite to driving for UberX.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 18**

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 18's use of the term "UberX driver" because it erroneously characterizes an association among the persons and entities described. Defendants object that REQUEST NO. 18 is also overbroad and unduly burdensome because it is not limited to examinations related to cities in which Plaintiffs operate. Defendants object to REQUEST NO. 18 on the ground that the word "examination" is vague and ambiguous. Defendants object to REQUEST NO. 18 to the extent it seeks documents that are already public, already in Plaintiffs' possession, custody or control, or are otherwise available from sources to which Plaintiffs also have access. Defendants object to REQUEST NO. 18 to the extent it seeks documents or information protected by

the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follows: Defendants will produce on a rolling basis any non-privileged documents that are responsive to REQUEST NO. 18 to the extent that they relate to the cities in which Plaintiffs operate.

**PLAINTIFFS' REQUEST FOR PRODUCTION NO. 19**

All Documents reflecting, relating to, or evidencing the vehicle inspection form that potential UberX drivers must submit to You as a prerequisite to driving for UberX.

**DEFENDANTS' RESPONSE TO REQUEST FOR PRODUCTION NO. 19**

Defendants incorporate their Preliminary Statement and General Objections as though fully set forth herein. Defendants object to REQUEST NO. 19's use the term "UberX drivers" because it erroneously characterizes an association among the persons and entities described. Defendants object that REQUEST NO. 19 is also overbroad and unduly burdensome because it is not limited to vehicle inspections in cities in which Plaintiffs operate. Defendants object to REQUEST NO. 19 to the extent it seeks documents that are already public, already in Plaintiffs' possession, custody or control, or are otherwise available from sources to which Plaintiffs also have access. Defendants object to REQUEST NO. 19 to the extent it seeks documents or information protected by the attorney-client privilege, attorney work-product doctrine, joint defense privilege, common interest exception, or any other applicable privilege, immunity, doctrine or protection.

Subject to and without waiving these objections, Defendants respond as follow: Defendants will produce on a rolling basis any non-privileged documents responsive to REQUEST NO. 19 to extent that they relate to the cities in which Plaintiffs operate.